**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 25-CV-20647-BLOOM/Elfenbein

**EUCLID TURNAROUND**
**OPPORTUNITY FUND LP**,

      Plaintiff,

v.

**AMERANT EQUIPMENT FINANCE**,
*et al.*,

      Defendants.

_____/

## ORDER AFTER DISCOVERY HEARING

    **THIS CAUSE** is before the Court on Plaintiff Euclid Turnaround Opportunity Fund LP's Notice of Discovery Hearing (the "Notice"), in which it alerted the Court that the Parties required assistance with two discovery disputes:

1. Whether the stipulations produced by America1 Holdings, LLC, and America1 Industries, LLC on April 15, 2025, which did not identify the underlying, beneficial members of the limited liability companies that are members of America1 Holdings, LLC and America1 Industries, LLC, failed to comply with this Court's Order granting Plaintiffs' motion to compel (ECF No. 94), and the parties' agreement following a meet-and-confer discussion regarding the postponement of the depositions of Sergei Bartushev and Oleksandr Bereva. The subpoenas underlying the Court's Order were served on non-parties Sergei Bartushev, SB Ecliptica, LLC, Truewind Management, LLC, America1 Holdings, LLC, and America1 Industries, LLC, all of whom are referenced in the operative complaint, to produce non-privileged documents responsive to the requests in subpoenas served on them concerning the membership and citizenship of America1 Holdings, LLC, and America1 Industries, LLC.

2. Whether non-party Sergei Bartushev is required to produce non-privileged documents responsive to the requests in the subpoena served on him concerning the transactions referenced in the complaint and the business relationship between the entities to which he is connected and the named Defendants in the action, including Amerant, Alliance Metals, LLC, Technocon, LLC, Alliance Metals Alabama, LLC, Larry Y. Gitman, and/or Jacob Gitman. This involves Requests Nos. 1, 2, 4, 5, and 6 in the subpoena served on Mr. Bartushev.

*See* ECF No. [104] at 1–2.  The Court held a hearing on the discovery disputes listed in the Notice on April 29, 2025 (the "Hearing").  *See* ECF No. [103]; ECF No. [105].

At the Hearing, Plaintiff made two Oral Motions: (1) an Oral Motion to Compel America1 Holdings, LLC and America1 Industries, LLC to comply with the Court's April 8 Order (the "Motion to Compel Jurisdictional Discovery"), *see* ECF No. [128], which required them to "provide Plaintiff either a written stipulation containing" their "membership and citizenship information or produce documents reflecting that information no later than April 15, 2025," *see* ECF No. [94] at 4; and (2) an Oral Motion to Compel Sergei Bartushev to produce non-privileged documents responsive to Requests Nos. 1, 2, 4, 5, and 6 in the subpoena served on him, *see* ECF No. [104-2] at 12–15 (the "Motion to Compel Merits Discovery"), *see* ECF No. [129].

America1 Holdings, America1 Industries, and Bartushev (collectively, the "America1 Parties") made an Oral Motion for Reconsideration (the "Motion for Reconsideration"), *see* ECF No. [130], asking the Court to revisit its earlier holding that Plaintiff's limited jurisdictional discovery is appropriate under the test articulated in *Beale v. Husqvarna AB*, No. 20-CV-80909, 2020 WL 6472615, at *2 (S.D. Fla. Aug. 3, 2020).  *See* ECF No. [94] at 3–4; ECF No. [110] at 19–44; *cf.* ECF No. [106].  They also argued that the Court may not have subject-matter jurisdiction over this matter because Plaintiff has not properly alleged its own citizenship in the Second Amended Complaint.[1]  *See* ECF No. [34] at 2; ECF No. [110] at 19–44; *cf.* ECF No. [106]. Recognizing that it cannot issue a discovery ruling — or take any other merits-related action — if it lacks subject-matter jurisdiction, the Court ordered Plaintiff and the America1 Parties to submit supplemental briefs addressing whether Plaintiff's allegations in the Second Amended Complaint are sufficient to invoke diversity jurisdiction.  *See* ECF No. [110] at 58–61.

---

[1] At the time of the Hearing, the Second Amended Complaint was the operative one.  *See* ECF No. [34]. Plaintiff has since filed its Third Amended Complaint.  *See* ECF No. [111].  Relevant here, the Third Amended Complaint added jurisdictional allegations and made America1 Holdings, LLC, America1 Industries, LLC, and Sergei Bartushev Defendants in this lawsuit.  *See* ECF No. [111].

The Court took all three Oral Motions under advisement until it resolved the subject-matter jurisdiction issue. *See* ECF No. [110] at 61. The Court received the supplemental briefs on May 2, 2025. *See* ECF No. [107]; ECF No. [108]. After reviewing those briefs, the Court determined it required additional information to resolve the subject-matter jurisdiction issue, so it ordered Plaintiff to "file a complete copy of the 'Memorandum and Articles of Association of Saray Value Fund SPC dated 31 January 2024' on the docket," as that document was "referenced and described in the affidavit attached to Plaintiff's brief" but not included with the brief. *See* ECF No. [118]. The Court received the Memorandum and Articles of Association of Saray Value Fund SPC (the "Articles of Association") on May 22, 2025. *See* ECF No. [125]. Having now considered the Notice, arguments made at the Hearing, supplemental briefs, and Articles of Association, it is **ORDERED and ADJUDGED** as follows:

## I.     Subject-Matter Jurisdiction

The Court begins, as it must, with subject-matter jurisdiction. *See, e.g.*, *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999) (recognizing "a federal court is powerless to act without jurisdiction" and therefore "is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking"). As noted, the America1 Parties contend the Court may not have subject-matter jurisdiction here because Plaintiff has not properly alleged its own citizenship. Although counsel for the America1 Parties highlighted what he viewed as deficiencies with the jurisdictional allegations in the Second Amended Complaint, *see* ECF No. [110] at 34–35, the Court will examine the Third Amended Complaint, which is the currently operative one, *see* ECF No. [111]; ECF No. [114].

### A.  Governing Law

Federal courts are courts of limited subject-matter jurisdiction. *Hensley v. Hartford Cas. Ins. Co.*, 113 F.4th 1327, 1332 (11th Cir. 2024) (quotation marks omitted). "A district court can hear a

case only if it has at least one of three types of subject matter jurisdiction: (1) jurisdiction under a specific statutory grant; (2) federal question jurisdiction pursuant to 28 U.S.C. § 1331; or (3) diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)." *Id.* (quotation marks omitted); *see also Travaglio v. Am. Exp. Co.*, 735 F.3d 1266, 1268 (11th Cir. 2013) ("[I]f a complaint's factual allegations do not assure the court it has subject matter jurisdiction, then the court is without power to do anything in the case."). At issue here is diversity jurisdiction under § 1332(a), as that is the jurisdictional basis the Third Amended Complaint alleges. *See* ECF No. [111] at 2.

"When a plaintiff files suit in federal court, she must allege facts that, if true, show federal subject matter jurisdiction over her case exists. Those allegations, when federal jurisdiction is invoked based upon diversity, must include the citizenship of each party." *Travaglio*, 735 F.3d at 1268 (citation omitted). That is because "the diversity jurisdiction statute requires *complete* diversity," *see, e.g.*, *Orchid Quay, LLC v. Suncor Bristol Bay, LLC*, 178 F. Supp. 3d 1300, 1303 (S.D. Fla. 2016), which means "no plaintiff" can be "a citizen of the same state as any defendant," *see Travaglio*, 735 F.3d at 1268; 28 U.S.C. § 1332(a)(1) (requiring the action to be between "citizens of different States"), and "an alien on both sides of a dispute will defeat jurisdiction," *see Caron v. NCL (Bahamas) Ltd.*, 910 F.3d 1359, 1364 (11th Cir. 2018); 28 U.S.C. § 1332(a)(2) (requiring the action to be between "citizens of a State and citizens or subjects of a foreign state"). "The party commencing suit in federal court . . . has the burden of establishing, by a preponderance of the evidence, facts supporting the existence of federal jurisdiction." *Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079, 1085 (11th Cir. 2010); *see also Hertz Corp. v. Friend*, 559 U.S. 77, 96–97 (2010) ("When challenged on allegations of jurisdictional facts, the parties must support their allegations by competent proof.").

"For well over a century, federal law has drawn a sharp distinction between corporations and virtually every other form of association for purposes of determining diversity of citizenship."

4

*Osting-Schwinn*, 613 F.3d at 1086.  "On the one hand, corporations are considered legal persons whose citizenship does not depend on that of their shareholders." *Id.*  As separate legal persons, corporations are "presumed conclusively to be citizens" of their "State of incorporation." *See Carden v. Arkoma Assocs.*, 494 U.S. 185, 188 (1990) (quotation marks omitted). "Additionally, 'a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business' for diversity jurisdiction purposes." *Dome v. Celebrity Cruises Inc.*, 595 F. Supp. 3d 1212, 1220 (S.D. Fla. 2022) (quoting 28 U.S.C. § 1332(c)(1)).  Congress codified these corporate jurisdictional principles in 28 U.S.C. § 1332(c): "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." *See* 28 U.S.C. § 1332(c)(1).[2]

"On the other hand, unincorporated associations do not themselves have any citizenship, but instead must prove the citizenship of each of their members to meet the jurisdictional requirements of 28 U.S.C. § 1332." *Osting-Schwinn*, 613 F.3d at 1086.  "Furthermore, no matter the particular features of an unincorporated entity, it has long been the tradition of the common law to treat as legal persons only incorporated groups and to assimilate all others to partnerships, which must plead the citizenship of each member." *Id.* (cleaned up).  Indeed, the Supreme Court has "reject[ed] the contention that to determine, for diversity purposes, the citizenship of an artificial entity, the court may consult the citizenship of less than all of the entity's members" and instead has "adhere[d] to [its] oft-repeated rule that diversity jurisdiction in a suit by or against the entity depends on the citizenship of all the members." *See Carden*, 494 U.S. at 195 (quotation marks omitted); *Americold Realty Tr. v. Conagra Foods, Inc.*, 577 U.S. 378, 384 (2016) ("When we last examined the 'doctrinal wall' between corporate and unincorporated entities in [*Carden*], we saw no reason to tear it down.").

---

[2] The statute provides separate rules for insurers, *see* 28 U.S.C. § 1332(c)(1), which are not relevant here.

Because the Supreme Court has maintained the sharp division between corporate and non-corporate entities in this context, "for purposes of diversity of citizenship, a limited partnership is a citizen of each state in which any of its partners, limited or general, are citizens." *Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1021 (11th Cir. 2004). The same is true for a limited liability company. *See id.* at 1022. Congress has not codified the jurisdictional principles that apply to non-corporations. *See generally* 28 U.S.C. § 1332. Nor has it added any non-corporation entities to the "special jurisdictional rule" in § 1332(c), despite the Supreme Court's clearly stated position that any such expansion is Congress' to enact. *See Americold*, 577 U.S. at 384 (declining "to apply the same rule to an unincorporated entity that applies to a corporation—namely, to consider it a citizen only of its State of establishment and its principal place of business" and reaffirming "it is up to Congress if it wishes to incorporate other entities into" § 1332(c)'s "special jurisdictional rule").

Given the still-standing doctrinal wall between corporate and unincorporated entities for jurisdictional purposes, *see Americold*, 577 U.S. at 384; *Carden*, 494 U.S. at 190, a court must first determine what type of business association an entity is before it can evaluate whether diversity jurisdiction exists. Making that determination can be challenging, particularly when the entity was created outside of the United States. *See BouMatic, LLC v. Idento Operations, BV*, 759 F.3d 790, 791 (7th Cir. 2014) ("Classification of a foreign business entity can be difficult because other nations may use subsets of the characteristics that distinguish corporations from other business entities in the United States." (citation omitted)). While Congress, the Supreme Court, and the Eleventh Circuit have all explained how courts should determine the citizenship of various business associations for diversity jurisdiction purposes, *see* 28 U.S.C. § 1332(c)(1); *Carden*, 494 U.S. at 188–95; *Osting-Schwinn*, 613 F.3d at 1086, none of them has yet articulated how courts should determine in the first instance what kind of business association a non-U.S. entity is — that is, if a business entity created

6

outside the United States is a corporation or not a corporation for jurisdictional purposes.

Four of our sister Circuits, however, have addressed this question. *See, e.g.*, *Starstone Ins. SE v. City of Chicago*, 133 F.4th 764, 767 (7th Cir. 2025); *Jet Midwest Int'l Co., Ltd v. Jet Midwest Grp., LLC*, 932 F.3d 1102, 1105 (8th Cir. 2019); *Berik Stiftung v. Plains Mktg., L.P.*, 603 F.3d 295, 298–99 (5th Cir. 2010); *Cohn v. Rosenfeld*, 733 F.2d 625, 629 (9th Cir. 1984). Two of them, the Ninth and Fifth Circuits, "have adopted a 'juridical person' test, under which if the business entity is treated as a legal person in its home country, it is a citizen of that jurisdiction for diversity purposes" (the "juridical person test"). *See Ekopel D.O.O. v. Citibank, N.A.*, 717 F. Supp. 3d 17, 26 (D.D.C. 2024); *Berik Stiftung*, 603 F.3d at 298–99; *Cohn*, 733 F.2d at 629. The other two, the Seventh and Eighth Circuits, "consider specific aspects of the foreign business entity to determine whether its closest domestic analogue is a corporation versus an LLC or other unincorporated association — and, if the latter, the foreign business entity takes the citizenship of each of its members" (the "specific attributes test"). *Ekopel*, 717 F. Supp. 3d at 26; *Starstone*, 133 F.4th at 767; *Jet Midwest*, 932 F.3d at 1105.

Like other courts in this District have, the Court "finds it much more likely the Eleventh Circuit would agree with the course taken by the Seventh Circuit . . . than that taken by the Ninth Circuit." *See Bradshaw Constr. Corp. v. Underwriters at Lloyd's, London*, No. 15-24382-CIV, 2016 WL 8739603, at *6 (S.D. Fla. Jan. 8, 2016). That is because the Ninth and Fifth Circuits based their juridical person approach on a Supreme Court decision, *Puerto Rico v. Russell & Co.*, 288 U.S. 476, 481–82 (1933), that has since been "limited significantly." *See Bradshaw*, 2016 WL 8739603, at *6; *Berik Stiftung*, 603 F.3d at 298–99; *Cohn*, 733 F.2d at 628–29. Indeed, the Supreme Court recognized in *Carden* that it had "specifically rejected" the *Russell* approach when litigants "proposed" it in a later case, *see* 494 U.S. at 190 (citing *Steelworkers v. R.H. Bouligny, Inc.*, 382 U.S. 145, 151 (1965)), and the Eleventh Circuit has acknowledged the Supreme Court's limitation of *Russell* to the particular entity "formed under Puerto Rican civil law" it evaluated in that case (a sociedad en comandita), *see*

*Osting-Schwinn*, 613 F.3d at 1088 n.5 (calling *Russell* the "only real exception to the *Carden* rule").

As a foundational matter, the Seventh Circuit's specific attributes test recognizes that how the forming country labels the entity does not matter to the jurisdictional analysis. *See Starstone*, 133 F.4th at 767 ("[N]ames are not dispositive.").  Nor does "the body of law under which the form was created."  *See id.*  Instead, "[w]hat matters to the definition in § 1332(c)(1) is whether the entity, no matter what it is called and no matter where it is located, has the attributes of a 'corporation' as understood in the law of the United States."  *Id.*  The Seventh Circuit identified those "essential" attributes as "perpetual existence with a legal personality distinct from that of investors, shares that are tradeable (in principle, at least), and limited liability."  *Id.*

With its holding in *Starstone*, the Seventh Circuit adhered to the standard it has applied to this question since 2003, though it described the relevant attributes slightly differently then.  *See Lear Corp. v. Johnson Elec. Holdings Ltd.*, 353 F.3d 580, 582–83 (7th Cir. 2003) (analyzing a Bermuda entity limited by shares to see if its "legal attributes" would "classify it as" a U.S. corporation for diversity jurisdiction purposes and holding it was "equivalent in all legally material respects to a corporation under state law").  In *Lear*, the Seventh Circuit held that a Bermuda entity was a corporation for diversity jurisdiction purposes because it was "an entity with perpetual existence, governed by a Board of Directors, able to issue tradable shares . . . , and treated as independent of its equity investors—who are neither taxable on its profits nor liable for its debts."  *Id.* at 583.  A few years later in *BouMatic*, the Seventh Circuit held a Netherlands entity was a corporation for diversity jurisdiction purposes because it had "the standard elements of 'personhood' (perpetual existence, the right to contract and do business in its own name, and the right to sue and be sued) and" issued "shares to investors who enjoy limited liability (which is to say, are not liable for the business's debts)."  759 F.3d at 791.  It also noted the entity's shares could "be bought and sold, subject to restrictions that the business declares," which "is a common device" for U.S. "close corporations

too." *Id.*

In 2019, the Eighth Circuit joined the Seventh Circuit in using the specific attributes test. *See Jet Midwest*, 932 F.3d at 1105. In *Jet Midwest*, while addressing the "citizenship of a Hong Kong limited company," the Eighth Circuit "adopt[ed] the approach employed by the Seventh Circuit for considering the citizenship of foreign entities." *Id.* The Eighth Circuit noted the need to "account for linguistic and other differences between domestic and foreign business laws and the fact that other nations do not necessarily call entities that are in effect corporations by that name," and it took the relevant attributes from *BouMatic*. *Id.* Specifically, it considered whether the Hong Kong company had perpetual existence, the right to contract and do business in its own name, the right to sue and be sued, the ability to issue shares to investors who enjoy limited liability, and the ability to issue shares that could be bought and sold, subject to restrictions that the business declares. *Id.*

**B. Allegations Supporting Diversity Jurisdiction**

In the Third Amended Complaint, Plaintiff alleges it is "a citizen of Texas, the United Arab Emirates, and the Cayman Islands." *See* ECF No. [111] at 2. To explain how it arrived at that conclusion, Plaintiff further alleges that it "is a Delaware limited partnership" and that its "general partner, Euclid Partners GP LLC, is a Delaware limited liability company." *See* ECF No. [111] at 3. "Euclid Partners GP LLC's members are Howard Siegel and Adam Siegel, both of whom are domiciled in Texas." *See* ECF No. [111] at 3. Plaintiff alleges that its "remaining partners, Core Holdings US I LLC, Core Holdings US II LLC, Core Holdings US III LLC, Core Holdings US IV LLC, and Core Holdings US V LLC" are "each Delaware limited liability companies" that "each have one sole member, Saray Value Fund SPC." *See* ECF No. [111] at 3. Saray Value Fund SPC ("Saray"), is a "Cayman Islands exempted segregated portfolio company ('SPC') with its principal place of business in Dubai, United Arab Emirates." *See* ECF No. [111] at 3. Plaintiff alleges that, for diversity jurisdiction purposes, Saray "should be treated as" a corporation. *See* ECF No. [111] at

3.

      To support that allegation, Plaintiff alleges some of the general characteristics of Cayman Islands SPCs.  *See* ECF No. [111] at 3.  According to Plaintiff, SPCs are "incorporated" under "§ 5 of the Cayman Islands Companies Act."[3]  *See* ECF No. [111] at 3.  A Cayman Islands SPC "is a single legal entity with a perpetual existence and a legal personality distinct from that of investors, the ability to issue shares that are tradeable, and limited liability."  *See* ECF No. [111] at 3.  Plaintiff also alleges some characteristics specific to Saray, although Plaintiff implies that all Cayman Islands SPCs can bear those characteristics.  *See* ECF No. [111] at 3.  Saray "may sue or be sued in its own name," "may enter contracts," can "issue shares that can be tradeable," "limits the liability of its shareholders," "is governed by a board of directors," and "holds general meetings of shareholders." *See* ECF No. [111] at 3.  Plaintiff alleges those characteristics of Saray, and Cayman Islands SPCs in general, match up with "the essential attributes" and "material features of a United States corporation."  *See* ECF No. [111] at 3.

      As for Defendants, Plaintiff alleges they are "citizens of Florida, California, and Alabama." *See* ECF No. [111] at 2.  Defendants have not admitted or denied Plaintiff's jurisdictional allegations as to their own citizenship or Plaintiff's citizenship because they have not yet answered the Third Amended Complaint.  *See* ECF No. [121]; ECF No. [122]; ECF No. [127].  But the America1 Parties' supplemental brief provides additional characteristics of Cayman Islands SPCs, including that they "can create and operate one or more portfolios which are segregated from each other, with the benefit of statutory segregation of assets and liabilities between portfolios."  *See* ECF No. [108] at 8.  Those portfolios are "not considered" separate legal entities from the SPC itself but still must "be separately identified or designated."  *See* ECF No. [108] at 8 (quoting Cayman Is. Companies Act §§ 216, 221

---

[3] Plaintiff also alleges that "in the context of formation in particular, and the terms company and corporation are often used interchangeably in Cayman Islands law" and that "the words corporation and company are synonymous for the purposes of Cayman Islands law."  *See* ECF No. [111] at 3.

(2025)).   And the "assets and liabilities of each" portfolio are attributable only to that specific portfolio and, in some circumstances, the general SPC; they "do not extend to" any other portfolio. *See* ECF No. [108] at 8–9.

**C. Discussion**

As noted above, the Court must begin by determining what type of business association Saray is before it can evaluate whether diversity jurisdiction exists here.   To do that, the Court will apply the specific attributes test used by the Seventh and Eighth Circuits.   That test looks at "whether the entity, no matter what it is called and no matter where it is located, has the attributes of a 'corporation' as understood in the law of the United States."   *See Starstone*, 133 F.4th at 767.   The attributes "essential" to a U.S. corporation, according to the Seventh and Eighth Circuits, are: (1) perpetual existence; (2) a legal personality distinct or independent from that of its investors, shown through such actions as the right to contract, do business, sue, and be sued in its own name; (3) being governed by a Board of Directors; (4) investors who enjoy limited liability, which means they are not taxed on the entity's profits or liable for its debts; (5) the ability to issue shares that are tradeable (in principle, at least) and may be bought and sold (subject to the entity's restrictions).   *See id.*; *Jet Midwest*, 932 F.3d at 1105; *BouMatic*, 759 F.3d at 791; *Lear*, 353 F.3d at 582–83; *cf. Bradshaw*, 2016 WL 8739603, at *6.

Read together with the Cayman Islands Companies Act (which lays out the general characteristics of Cayman Islands SPCs) and Saray's Articles of Association (which memorialize its specific characteristics), the Third Amended Complaint sufficiently alleges that Saray has the essential attributes of a United States corporation. *See* Cayman Is. Companies Act (2025), https://www.cima.ky/upimages/lawsregulations/CompaniesAct2025Revision_1738876914.pdf; ECF No. [111] at 2–3; ECF No. [125].  First, it alleges Saray "is a single legal entity with a perpetual existence."  *See* ECF No. [111] at 3; *Starstone*, 133 F.4th at 767.  Second, it alleges Saray has "a

legal personality distinct from that of investors," "may sue or be sued in its own name," and "may enter contracts." *See* ECF No. [111] at 3; *BouMatic*, 759 F.3d at 791. Third, it alleges Saray "is governed by a board of directors" and "holds general meetings of shareholders." *See* ECF No. [111] at 3; *Lear*, 353 F.3d at 582–83. Fourth, it alleges Saray "limits the liability of its shareholders."[4] *See* ECF No. [111] at 3; *Starstone*, 133 F.4th at 767; *Jet Midwest*, 932 F.3d at 1105; *BouMatic*, 759 F.3d at 791; *Lear*, 353 F.3d at 582–83. Fifth, it alleges Saray has "the ability to issue shares that can be tradeable." *See* ECF No. [111] at 3; *Starstone*, 133 F.4th at 767; *Jet Midwest*, 932 F.3d at 1105; *BouMatic*, 759 F.3d at 791; *Lear*, 353 F.3d at 582–83.

Because those allegations satisfy every factor of the specific attributes test, the Court finds that Saray should be treated as a corporation for purposes of § 1332(c).[5] And as a corporation, Saray is a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business. *See Carden*, 494 U.S. at 188; *Dome*, 595 F.

---

[4] To the extent the America1 Parties' supplemental brief advances a factual challenge to subject-matter jurisdiction, *see Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1233 (11th Cir. 2008) (explaining that "a factual attack on a complaint challenges the existence of subject matter jurisdiction using material extrinsic from the pleadings, such as affidavits or testimony"), the Court notes the additional attributes of Cayman Islands SPCs the America1 Parties list also support a conclusion that Saray should be treated as a corporation for § 1332(c) purposes, as they describe ways in which SPCs limit the liability of their investors. *See* ECF No. [108] at 8–9 (noting that Cayman Islands SPCs "can create and operate one or more portfolios which are segregated from each other, with the benefit of statutory segregation of assets and liabilities between portfolios" and that the "assets and liabilities of each" portfolio are attributable only to that specific portfolio and, in some circumstances, the general SPC but "do not extend to" any other portfolio). The other arguments the America1 Parties advance — that Cayman Islands SPCs are more like Series LLCs than corporations and that the IRS does not consider Cayman Islands SPCs to be corporations for tax purposes, *see* ECF No. [108] at 9–10 — do not change that fact.

[5] Although the specific attributes test does not consider how Cayman Islands law labels an SPC, the Court notes that the Companies Act itself supports a conclusion that SPCs should be treated as corporations. In the Companies Act, SPCs are defined as a particular type of "exempted company," *see* Cayman Is. Companies Act § 212, and companies that file a "memorandum of association" and register in compliance with the Act "form an incorporated" entity, *see id.* § 5. By contrast, the Cayman Islands Limited Liability Companies Act ("LLC Act") explains how to form that kind of unincorporated entity. *See* Cayman Is. Limited Liability Companies Act (2025), https://legislation.gov.ky/cms/images/LEGISLATION/PRINCIPAL/2016/2016-0002/LimitedLiabilityCompaniesAct_2025%20Revision.pdf. The LLC Act, which makes many references to companies "incorporated under the *Companies Act (2025 Revision)*," *see, e.g.*, Cayman Is. Limited Liability Companies Act § 6(2)(b), makes clear that SPCs cannot be limited liability companies, *see id.* §§ 50(1)(c), 56(1)(c).

Supp. 3d at 1220; 28 U.S.C. § 1332(c)(1).  As discussed, Saray is incorporated in the Cayman Islands, ECF No. [111] at 3, so it is a citizen of the Cayman Islands for § 1332(c) purposes.  Saray has its principal place of business in in Dubai, United Arab Emirates, ECF No. [111] at 3, so it is also a citizen of the UAE for § 1332(c) purposes.  Finally, the members of Plaintiff's general partner are individuals domiciled in Texas, see ECF No. [111] at 3, which makes Plaintiff a citizen of Texas as well, *see Osting-Schwinn*, 613 F.3d at 1086.  That means Plaintiff is indeed "a citizen of Texas, the United Arab Emirates, and the Cayman Islands," as it alleges.  *See* ECF No. [111] at 2.

Plaintiff further alleges that Defendants are "citizens of Florida, California, and Alabama." *See* ECF No. [111] at 2.  Because Plaintiff is not a citizen of the same State as any Defendant, complete diversity exists.  *See Orchid Quay, LLC*, 178 F. Supp. 3d at 1303; *Travaglio*, 735 F.3d at 1268.  And because complete diversity exists, the Court has subject-matter jurisdiction over this case. *See Orchid Quay, LLC*, 178 F. Supp. 3d at 1303; *Travaglio*, 735 F.3d at 1268.  Having confirmed that it has subject-matter jurisdiction, the Court moves to the merits of the motions.

## II.      Motion for Reconsideration and Motion to Compel Jurisdictional Discovery

During the Hearing, counsel for the America1 Parties asked the Court to reconsider under Federal Rules of Civil Procedure 59 and 60 its earlier ruling that Plaintiff's limited jurisdictional discovery is appropriate.  *See* ECF No. [94] at 3–4; ECF No. [110] at 19–44; *cf.* ECF No. [106]. Counsel argued the America1 Parties are not "involved in the foundation" of Plaintiff's claim, which makes the jurisdictional discovery Plaintiff sought (and the Court granted) in an earlier hearing outside the scope of what is permitted under Rule 26.  *See* ECF No. [110] at 23.  When the Court noted that argument "could have and should have been raised" at the earlier discovery hearing, counsel for the America1 Parties explained that he did not make those arguments because he was not yet part of the case when the Court issued that earlier ruling.  *See* ECF No. [110] at 24.

Prompted by the Court's questions, counsel confirmed the America1 Parties sought

reconsideration based on "manifest injustice." *See* ECF No. [110] at 24. Specifically, counsel argued Plaintiff's "representations" to the Court that the then-operative Second Amended Complaint referenced both America1 entities were false because only America1 Holdings, LLC was referenced and America1 Industries, LLC was not. *See* ECF No. [110] at 24–25. Counsel also argued Plaintiff's claims "relate to the breach of the purchase and sale agreement of Amerant Bank's promissory note," which was with SB Ecliptica, not the America1 Parties. *See* ECF No. [110] at 24–25. And he argued SB Ecliptica had never assigned that promissory note to anyone, including the America1 Parties, despite two potentially contradictory statements about an assignment. *See* ECF No. [110] at 12–13, 19, 27.

Although the Court and counsel for the America1 Parties discussed the Motion for Reconsideration using the standards applicable to Rules 59 and 60, the Eleventh Circuit recently clarified it is actually Rule 54 that applies when a party asks a trial court to reconsider a non-final order. *See Hornady v. Outokumpu Stainless USA, LLC*, 118 F.4th 1367, 1379 (11th Cir. 2024) (recognizing its precedent had been "less than clear" about "what standard of review district courts should employ when faced with" a motion for reconsideration "in the context of a non-final order"). In *Hornady*, the Court held that Rule 54(b) "governs a district court's reconsideration of interlocutory orders" and that the standards of Rule 59(e) and Rule 60(b) "do not apply" because those Rules "come into play" only "after a final, appealable judgment is entered." *Id.* It explained that under Rule 54(b) "district courts retain plenary power to reconsider an interlocutory order before the entry of final judgment." *Id.*; *see also* Fed. R. Civ. P. 54(b) (explaining that an order "that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities"). For that reason, when "a district court enters a non-final order, it should evaluate motions to reconsider that order under the standards inherent in Rule 54(b) — plenary authority to

reconsider, revise, alter or amend a non-final order before the entry of final judgment." *Hornady*, 118 F.4th at 1379–80 (quotation marks omitted).

Still, while district courts "enjoy plenary *power* to reconsider non-final rulings, they need not employ plenary *review* when doing so." *Id.* at 1380 (emphasis in original). "[I]n most instances district courts should hesitate before revisiting their earlier interlocutory order" because "important interests of finality, stability, and predictability" underlie "justifiable caution." *Id.* The "district court's decision to reconsider an interlocutory order" is "committed to its sound judgment," though the court should use the law-of-the-case doctrine as a guide because it "expresses the practice of courts generally to refuse to reopen what has been decided." *See id.* (quotation marks omitted) (noting that the law of the case doctrine operates "with more or less force depending on the stage of litigation" and encourages courts to adhere to "the general point that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case" (quotation marks omitted)).

That is why it is not enough for a movant to "simply rehash[] arguments already considered and rejected" and why "the more time that has passed between a district court's ruling and a party's motion to reconsider that ruling, the less willing the court ought to be to entertain the party's request." *See id.* at 1381 (noting that parties must "be able to rely on the rulings that progressively direct proceedings toward trial"). Ultimately, "[c]ommon sense, not a rigid set of rules, governs." *See id.* at 1380–81 (quotation marks omitted).

Even so, if the movant can "meet a significantly higher showing for reconsideration — for example, the standards applicable to Rules 59(e) or 60(b), or the exceptions to the mandate rule — the district court should not hesitate to revisit its prior ruling." *Id.* at 1381. "But just because a movant fails to meet these higher standards does not mean that reconsideration cannot be had — the district court may still have room to conclude that reconsideration is appropriate." *Id.* "In short,

district courts have discretion to revisit their prior interlocutory orders, considering both the weight of the moving party's arguments and the disruption that a change would cause in light of the time that has passed since the decision was initially made." *Id.*

Applying that standard here, the Court declines to reconsider its earlier ruling. Although counsel for the America1 Parties did not simply rehash the arguments that were made in the earlier discovery hearing, he also did not present any new facts or law that justify changing the earlier ruling. The America1 Parties's Motion for Reconsideration relies primarily on their contention that Amerant never assigned its promissory note, which means that discovery into entities that may have been the intended assignees (like the America1 Parties) is beyond the scope of the currently pleaded claims. But as explained at the Hearing, Plaintiff has a good reason for its belief that SB Ecliptica may have assigned its promissory note to the America1 Parties: an attorney for SB Ecliptica represented as much in an email to Amerant. *See* ECF No. [111] at 12–13; ECF No. [104-3] at 112–13. While that attorney has since corrected that representation with a declaration averring he was mistaken, *see* ECF No. [104-3] at 112, that correction does not make Plaintiff's earlier belief unreasonable. For that reason, the Court declines to exercise its plenary power to reconsider its earlier ruling that Plaintiff's requested jurisdictional discovery is permissible. Accordingly, the Motion for Reconsideration, **ECF No. [130]**, is **DENIED**.

Having denied the America1 Parties' Motion for Reconsideration, it follows that Plaintiff's Motion to Compel Jurisdictional Discovery should be granted. As discussed at the Hearing, Plaintiff's current theory of the case is that SB Ecliptica assigned the promissory note it purchased from Amerant to one or more third parties. *See* ECF No. [110] at 22–27. Given the information it has received so far, Plaintiff reasonably believes the America1 Parties may be (or at some point were intended to be) the assignees. *See* ECF No. [110] at 12–13. At the time of the Hearing, Plaintiff was still assessing whether to join the America1 Parties as Defendants in this action. To do so properly,

Plaintiff needed the jurisdictional discovery.  Plaintiff also needed the jurisdictional discovery to respond to Defendant Amerant's Motion to require joinder of necessary third parties.  *See* ECF No. [94]; ECF No. [60].

Plaintiff's discovery requests to the America1 Parties are designed to ascertain information about their citizenship to evaluate whether such joinder would be possible without destroying diversity jurisdiction.  *See* ECF No. [110] at 22–27.  That is why the Court granted Plaintiff's Motion to Compel at the first hearing, *see* ECF No. [94], and it is it why Plaintiff's current Motion to Compel Jurisdictional Discovery is due to be granted now.  Although Plaintiff has since joined the America1 Parties as Defendants, *see* ECF No. [111], the jurisdictional discovery remains relevant because if the discovery reveals that the America1 Parties' citizenships would destroy diversity jurisdiction, Plaintiff may decide to move for leave to amend the complaint again so that it can drop them from the lawsuit.  Accordingly, Plaintiff's Motion for Jurisdictional Discovery, **ECF No. [128]**, is **GRANTED**.  The America1 Parties **SHALL PRODUCE** the documents set out in the Court's earlier discovery order, *see* ECF No. [94] at 4, **no later than June 13, 2025**.[6]

### III.    Motion to Compel Merits Discovery

Finally, the Court turns to Plaintiff's Motion to Compel Merits Discovery.  In that Motion, Plaintiff asks the Court to compel Bartushev to produce "non-privileged documents responsive to the requests in the subpoena served on him concerning the transactions referenced in the complaint and the business relationship between the entities to which he is connected and the named Defendants in the action, including Amerant, Alliance Metals, LLC, Technocon, LLC, Alliance Metals Alabama, LLC, Larry Y. Gitman, and/or Jacob Gitman."  *See* ECF No. [104] at 2.  Plaintiff notes that the Motion to Compel Merits Discovery "involves Requests Nos. 1, 2, 4, 5, and 6 in the subpoena served on Mr. Bartushev."  *See* ECF No. [104] at 2.

---

[6] At the Hearing, counsel for the America1 Parties represented that, if the Court ordered this discovery, it could be produced "within 48 hours."  *See* ECF No. [110] at 32.

According to Plaintiff, Bartushev objects to these Requests because he was "issued the subpoena in his individual capacity" instead of as the principal for the entities he controls (like SB Ecliptica).[7] *See* ECF No. [110] at 15–18.  Plaintiff contends the Court should overrule that objection because the distinction is academic.  *See* ECF No. [110] at 15–18.  Bartushev "is the principal of these entities" and "has custody, control, or possession of these documents."  *See* ECF No. [110] at 15–18.  Counsel for the America1 Parties, which include Bartushev, argues Plaintiff's discovery requests "are way outside the" permissible scope of Rule 26 because they ask "for all the agreements between Alliance and the America entities and all the communications" without any limitation to documents related to the promissory note from Amerant.  *See* ECF No. [110] at 33.  He also argues the discovery is "irrelevant" and "not appropriate under Rule 26."  *See* ECF No. [110] at 33.  In reply, Plaintiff reiterates that the discovery is permissible under Rule 26 because it relates to "entities that are referenced in the complaint as conspiring, acting in concert together to take away" Plaintiff's property (that is, to Plaintiff's conversion and tortious interference claims).  *See* ECF No. [110] at 47–49.

The Court agrees with Plaintiff.  As already noted, Rule 26 provides that parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  The discovery requests to Bartushev meet these requirements.  *See* ECF No. [104-2] at 12–15.  First, as Plaintiff noted, the information sought is relevant to entities the Third Amended Complaint alleges conspired to interfere with an agreement Plaintiff had with Amerant.  *See* ECF No. [111] at 19–26.  For that reason, it is relevant to Plaintiff's conversion and tortious inference claims.  *See* ECF No. [111] at 19–26; Fed. R. Civ. P. 26(b)(1).  Second, the America1 Parties have not objected based on undue burden.  *See* ECF No.

---

[7] At the Hearing, Plaintiff also addressed Bartushev's objection that he is not yet a party to this action, *see* ECF No. [110] at 15–18, but Plaintiff's decision to add America1 Holdings, LLC, America1 Industries, LLC, and Sergei Bartushev as Defendants in this lawsuit has mooted that objection, *see* ECF No. [111].

[110] at 15–18; Fed. R. Civ. P. 26(b)(1).  And third, the information sought is proportional to the needs of the case because it is properly limited to the transaction underlying the Third Amended Complaint and the entities alleged (or reasonably believed) to have been involved in that transaction.  *See* ECF No. [104-2] at 12–15; Fed. R. Civ. P. 26(b)(1).

Although Rule 45 subpoenas are not the discovery device typically used to get documents from a party — that distinction belongs to requests for production under Rule 34 — neither Rule 26 nor Rule 45 prohibits issuing subpoenas to parties.  *See generally* Fed. R. Civ. P. 26; Fed. R. Civ. P. 45.  Similarly, the Parties have not provided, and the Court has not found, any case law interpreting those Rules to require that parties use Rule 34 instead of Rule 45 to obtain documents from another party in all situations.  *See, e.g.*, *Manzo-Pianelli v. United Servs. Auto. Ass'n*, No. 15-61324, 2015 WL 12806618, at *1 (S.D. Fla. Nov. 3, 2015) ("The Eleventh Circuit has not expressly addressed whether a Rule 45 subpoena may be properly served on a party.").  Instead, case law indicates only that "a Rule 45 subpoena cannot circumvent other discovery rules that apply to a party."  *See id.*; *Progressive Emu Inc. v. Nutrition & Fitness Inc.*, 785 F. App'x 622, 629 (11th Cir. 2019) (noting a party had "circumvented the discovery process" by issuing a subpoena "on the eve of trial seeking documents it failed to diligently pursue during discovery"); *Antech Diagnostics, Inc. v. Posner*, No. 17-80185-CV, 2017 WL 6948590, at *1 (S.D. Fla. Nov. 14, 2017) ("A Rule 45 subpoena duces tecum cannot be used as a form of discovery to circumvent deadlines.")*;Tara Prods., Inc. v. Hollywood Gadgets, Inc.*, No. 09-61436-CIV, 2014 WL 1047411, at *3 (S.D. Fla. Mar. 18, 2014) (noting that a subpoena may not be used to "do an 'end-run' around the discovery rules that apply to a party").

When courts have prohibited parties from using Rule 45 subpoenas to get documents from another party, they usually have done so because the discovery deadline has passed, and the party is attempting "to improperly reopen discovery." *See, e.g.*, *Prior v. Neurospine Inst. LLC*, No. 23-

60676-CIV, 2024 WL 4564727, at *2 (S.D. Fla. Aug. 20, 2024). Another common scenario involves a party issuing a Rule 45 subpoena before the close of discovery but when fewer than 30 days remain in the discovery period, as parties have 30 days to respond to Rule 34 requests for production but only 14 days to respond to Rule 45 subpoenas. *See, e.g.*, *Tara Prods., Inc.*, 2014 WL 1047411, at *4 ("It is evident that the Judgment Creditor served the subpoena *duces tecum* (which gave Impleaded Party Lakewood only 14 days to produce the requested documents) to circumvent the 30–day response time afforded a party under Rule 34. . . . Had the Judgment Creditor afforded Lakewood the required 30 days, the date for the document production would have been October 22, 2012, well after the October 8, 2012 discovery deadline."). This case presents neither of those scenarios.

Here, Plaintiff served Rule 45 subpoenas on the America1 Parties <u>before</u> they became Defendants in this lawsuit. When the subpoenas were served, then, Rule 45 was the appropriate (indeed, the only) mechanism for requesting documents from the America1 Parties. And the discovery period in this case does not end until October 28, 2025. *See* ECF No. [50] at 2. For those reasons, there is no indication Plaintiff was trying to circumvent or subvert discovery rules or deadlines when it issued the Rule 45 subpoenas.

Of course, now that the America1 Parties are Defendants, Plaintiff could serve them with Rule 34 requests for production to obtain the documents it originally sought through Rule 45 subpoenas when they were non-parties. In fact, some courts in this District have required plaintiffs to do so when their "use of Rule 45 circumvented the Rule 34 procedures." *See, e.g.*, *Manzo-Pianelli*, 2015 WL 12806618, at *2 (noting that "[b]y proceeding under Rule 45 instead of Rule 34, Plaintiff has circumvented the requirement of Rule 34 that a party has 30 days to respond to a request for production" and holding that "Plaintiff may proceed under Rule 34" because it could use that Rule "to obtain the non-privileged documents sought"). But the America1 Parties have

CASE NO. 25-CV-20647-BLOOM/Elfenbein

already responded to the Rule 45 subpoenas with extensive procedural and substantive objections. *See* ECF No. [104-2] at 16–28, 61–64, 73–76, 93–105.  So there is also no indication that they have not had adequate time to respond because of Rule 45's shorter response period.  *See Manzo-Pianelli*, 2015 WL 12806618, at *2 (noting that entities have 14 days to respond under Rule 45).  Finally, the Parties have not provided, and the Court has not found, any authority indicating that pending Rule 45 subpoenas to non-parties become moot when those non-parties are added as parties to the case.

In sum, because the Rule 45 subpoenas were proper when issued, request documents that are relevant and proportional to the needs of the case, Plaintiff did not issue them to circumvent Rule 34's procedures and deadlines, and the America1 Parties were not deprived of their opportunity to object to the subpoena requests, the Court will enforce them.  Accordingly, Plaintiff's Motion to Compel Merits Discovery, **ECF No. [129]**, is **GRANTED**.  Bartushev **SHALL PRODUCE** the documents requested in the subpoena issued to him at ECF No. [104-2] at 12–15, **no later than June 24, 2025.**

**DONE and ORDERED** in Chambers in Miami, Florida on June 9, 2025.

**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**

Copies to:

Counsel of Record