UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 25-cv-20647-BLOOM/Elfenbein

EUCLID TURNAROUND OPPORTUNITY
FUND LP,

    Plaintiff,

v.

AMERANT EQUIPMENT FINANCE, *et al.*,

    Defendants.
_____/

## ORDER ADOPTING REPORT AND RECOMMENDATION

**THIS CAUSE** is before the Court upon Judge Elfenbein's Order After Discovery Hearing ("R&R"), ECF No. [133], filed on June 10, 2025. Defendants SB Ecliptica LLC, Truewind Management LLC, America1 Industries, LLC, America1 Holdings, LLC, and Sergei Bratushev ("Objecting Parties") filed Objections, ECF No. [134], to which Plaintiff Euclid Turnaround Opportunity Fund LP ("Euclid") filed a Response. ECF No. [141]. The Court has considered the R&R, the supporting and opposing submissions, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Court adopts the R&R in full.

**I.**     **BACKGROUND**

The Court assumes the parties' familiarity with the case and provides only the background necessary for the resolution of the instant dispute. During a discovery hearing before Judge Elfenbein on April 29, 2025 ("Hearing"), Euclid made two oral motions: (1) a Motion to Compel non-parties America1 Holdings, LLC and America1 Industries, LLC to Comply with the Court's April 8 Order compelling jurisdictional discovery, ECF No. [128]; and (2) a Motion to Compel Non-Party Sergei Bratushev to Produce Non-Privileged Documents Responsive to Requests Nos.

1, 2, 4, 5, and 6 in the Subpoena, ECF No. [129]. *See* ECF No. [133] at 2. During the hearing, America1 Holdings, America1 Industries, and Bratushev made an Oral Motion for Reconsideration, "asking the Court to revisit its earlier holding that Plaintiff's limited jurisdictional discovery is appropriate under the test articulated in *Beale v. Husqvarna AB*, No. 20-CV-80909, 2020 WL 6472615, at *2 (S.D. Fla. Aug. 3, 2020)." ECF No. [133] at 2. America1 Holdings, America1 Industries, and Bratushev also "argued that the Court may not have subject-matter jurisdiction over this matter because Plaintiff has not properly alleged its own citizenship in the Second Amended Complaint." *Id*.

After the hearing, Judge Elfenbein ordered Euclid and then non-parties America1 Holdings and America1 Industries to "file their briefing on subject-matter jurisdiction as it relates to whether Plaintiff has shown diversity of citizenship in the Second Complaint." ECF No. [105]. On May 5, 2025, this Court requested that Judge Elfenbein prepare a Report and Recommendation as to whether Euclid has shown diversity of citizenship in the Second Complaint. ECF No. [109].

On June 10, 2025, Judge Elfenbein issued an R&R, finding that the Court has subject-matter jurisdiction.[1] ECF No. [133] at 13. Judge Elfenbein also denied America1 Holdings, America1 Industries, and Bratushev's Motion for Reconsideration, granted Euclid's Motion to Compel Jurisdictional Discovery, and granted Euclid's Motion to Compel Merits Discovery. ECF No. [133] at 16, 17, 21.

The Objecting Parties argue (1) the "specific attributes" test that Judge Elfenbein applied is not dispositive for purposes of determining the citizenship of a foreign segregated portfolio

---

[1] As Judge Elfenbein noted at the time of the Hearing, the Second Amended Complaint was the operative complaint. ECF No. [133] at 2 n.1. Euclid subsequently filed a Third Amended Complaint, which added jurisdictional allegations and made America1 Holdings, LLC, America1 Industries, LLC, and Bratushev Defendants in the case. *Id.* As such, Judge Elfenbein examined the Third Amended Complaint in the R&R, which is currently the operative complaint. *Id.* at 3.

company ("SPC"); (2) because Judge Elfenbein determined that subject-matter jurisdiction exists, any need for jurisdictional discovery is moot; (3) merits discovery cannot be allowed pre-suit against a potential party, nor prior to the occurrence of a Rule 26 conference; and (4) the requested merits discovery is irrelevant and sought in bad faith. ECF No. [134]. In Response, Euclid argues (1) Judge Elfenbein correctly applied the specific attributes test; (2) the need for jurisdictional discovery is not moot; and (3) Judge Elfenbein conducted the appropriate analysis in compelling merits discovery. ECF No. [141].

## II. LEGAL STANDARD

"In order to challenge the findings and recommendations of the magistrate judge, a party must file written objections which shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection." *Macort v. Prem, Inc.*, 208 F. App'x 781, 783 (11th Cir. 2006) (quoting *Heath v. Jones*, 863 F.2d 815, 822 (11th Cir. 1989)) (alterations omitted). The objections must also present "supporting legal authority." S.D. Fla. L. Mag. J.R. 4(b). The portions of the R&R to which an objection is made are reviewed *de novo* only if those objections "pinpoint the specific findings that the party disagrees with." *United States v. Schultz*, 565 F.3d 1353, 1360 (11th Cir. 2009); *see also* Fed. R. Civ. P. 72(b)(3). If a party fails to object to any portion of the magistrate judge's report, those portions are reviewed for clear error. *Macort*, 208 F. App'x at 784; *see also Liberty Am. Ins. Grp., Inc. v. WestPoint Underwriters, L.L.C.*, 199 F. Supp. 2d 1271, 1276 (M.D. Fla. 2001). However, "[a] district court reviewing a magistrate judge's discovery order is, in general, limited by statute and rule to reversing that order only if it is 'clearly erroneous or contrary to law.'" *Wausau Underwriters Ins. Co. v. Danfoss, LLC*, 310 F.R.D. 689, 690 (S.D. Fla. 2015) (quoting *SEC v. Merkin*, 283 F.R.D. 699, 200 (S.D. Fla. 2012)).

"It is improper for an objecting party to . . . [submit] papers to a district court which are nothing more than a rehashing of the same arguments and positions taken in the original papers submitted to the Magistrate Judge. Clearly, parties are not to be afforded a 'second bite at the apple' when they file objections to a R & R." *Marlite, Inc. v. Eckenrod*, No. 10-cv-23641, 2012 WL 3614212, at *2 (S.D. Fla. Aug. 21, 2012) (quoting *Camardo v. Gen. Motors-Rate Emps. Pension Plan*, 806 F. Supp. 380, 382 (W.D.N.Y. 1992)). A court, in its discretion, need not consider arguments that were not, in the first instance, presented to the magistrate judge. *Williams v. McNeil*, 557 F.3d 1287, 1291 (11th Cir. 2009). A district court may accept, reject, or modify a magistrate judge's R&R. 28 U.S.C. § 636(b)(1).

## III. DISCUSSION

The sole issue for which the Court ordered an R&R was whether Euclid has demonstrated diversity of citizenship. ECF No. [109]. Therefore, the Court reviews the Objections to the R&R with respect to subject-matter jurisdiction *de novo*. However, the Objecting Parties' other two Objections are to non-dispositive discovery orders. Therefore, the Court will reverse the non-dispositive discovery orders only if they are "clearly erroneous or contrary to law. This is an extremely deferential standard of review, and this 'high bar' is 'rarely invoked.'" *Kleiman v. Wright*, No. 18-cv-80176, 2020 WL 1849407, at *2 (S.D. Fla. Apr. 13, 2020) (quoting *Cox Enters., Inc. v. News-Journal Corp.*, 794 F.3d 1259, 1272 (11th Cir. 2015); *see also Melero v. Kijakazi*, No. 20-cv-60939, 2022 WL 3154786, at *1 (S.D. Fla. May 20, 2022) ("To be clearly erroneous, a decision must strike us as more than just maybe or probably wrong; it must . . . strike us as wrong with the force of a five-week-old, unrefrigerated dead fish.") (quoting *Parts & Elec. Motors, Inc. v. Sterling Elec. Inc.*, 866 F.2d 228, 233 (7th Cir. 1988)).

Case No. 25-cv-20647-BLOOM/Elfenbein

## A. Subject-Matter Jurisdiction

Whether or not Euclid has properly alleged subject-matter jurisdiction primarily depends on the citizenship of Saray Value Fund SPC ("Saray"), a "Cayman Islands exempted segregated portfolio company[.]". ECF No. [133] at 9 (quoting ECF No. [111] at 3). To determine Saray's citizenship, the Court must first determine whether Saray should be treated as a corporation or an unincorporated association. Corporations are citizens of "every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). However, "unincorporated associations do not themselves have any citizenship, but instead must prove the citizenship of each of their members to meet the jurisdictional requirements of 28 U.S.C. § 1332." *Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079, 1086 (11th Cir. 2010). To determine whether, as an SPC, Saray should be treated as a corporation or an unincorporated association for jurisdictional purposes, Judge Elfenbein applied the "specific attributes" test,[2] which has been adopted by the Seventh and Eighth Circuits. ECF No. [133] at 11. Under the specific attributes test, the Court analyzes whether the foreign entity "has the attributes of a 'corporation' as understood in the law of the United States." *Starstone Ins. SE v. City of Chicago, Ill.*, 133 F.4th 764, 767 (7th Cir. 2025). Those attributes, as identified by the Seventh and Eighth Circuits are:

> (1) perpetual existence; (2) a legal personality distinct or independent from that of its investors, shown through such actions as the right to contract, do business, sue, and be sued in its own name; (3) being governed by a Board of Directors; (4)

---

[2] Although the Eleventh Circuit has not adopted a specific test to determine whether a foreign entity should be treated as a corporation or unincorporated association for jurisdictional purposes, courts in this district have found it "much more likely the Eleventh Circuit would agree with the course taken by the Seventh Circuit . . . than that taken by the Ninth Circuit[.]" *Bradshaw Constr. Corp. v. Underwriters at Lloyd's, London*, No. 15-cv-24382, 2016 WL 8739603, at *6 (S.D. Fla. Jan. 8, 2016). The test adopted by the Ninth and Fifth Circuits, the "juridical person" test, states that "if the business entity is treated as a legal person in its home country, it is a citizen of that jurisdiction for business purposes." *Ekopel D.O.O. v. Citibank, N.A.*, 717 F. Supp. 3d 17, 26 (D.D.C. 2024).

> investors who enjoy limited liability, which means they are not taxed on the entity's profits or liable for its debts; [and] (5) the ability to issue shares that are tradeable (in principle, at least) and may be bought and sold (subject to the entity's restrictions).

ECF No. [133] at 11 (citing *Starstone*, 133 F.4th at 767; *Jet Midwest Int'l Co., Ltd v. Jet Midwest Grp., LLC*, 932 F.3d 1102, 1105 (8th Cir. 2019); *BouMatic, LLC v. Idento Operations, BV*, 759 F.3d 790, 791 (7th Cir. 2014); *Lear Corp. v. Johnson Elec. Holdings Ltd.*, 353 F.3d 580, 582–83 (7th Cir. 2003); and *Bradshaw,* 2016 WL 8739603, at *6).

After analyzing each of the factors, Judge Elfenbein determined that the allegations in the Third Amended Complaint "satisfy every factor of the specific attributes test[.]" *Id.* at 12. Therefore, Saray "is a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business . . . . That means [Euclid] is indeed a 'citizen of Texas, the United Arab Emirates, and the Cayman Islands,' as it alleges." *Id.* at 12-13 (quoting ECF No. [111] at 2). Because Defendants are "citizens of Florida, California, and Alabama" and Euclid "is not a citizen of the same State as any Defendant, complete diversity exists." *Id.* at 13 (quoting ECF No. [111] at 2). As a result, the Court has subject-matter jurisdiction. *Id.*

The Objecting Parties argue that Judge Elfenbein misapplied the specific attributes test "due to the dispositive and very significantly unique attributes which distinguish the Saray business entity from any incorporated entity—that is, the existence of the segregated portfolios which have distinct assets, liabilities, and shareholders from one portfolio to another[.]" ECF No. [134] at 5. However, the Objecting Parties do not appear to dispute Judge Elfenbein's finding that the allegations in the Third Amended Complaint all weigh in favor of Saray being categorized as corporation:

> First, [the Third Amended Complaint] alleges Saray "is a single legal entity with a perpetual existence." *See* ECF No. [111] at 3; *Starstone*, 133 F.4th at 767. Second,

> it alleges Saray has "a legal personality distinct from that of investors," "may sue or be sued in its own name," and "may enter contracts." See ECF No. [111] at 3; *BouMatic*, 759 F.3d at 791. Third, it alleges Saray "is governed by a board of directors" and "holds general meetings of shareholders." See ECF No. [111] at 3; *Lear*, 353 F.3d at 582-83. Fourth, it alleges Saray "limits the liability of its shareholders." See ECF No. [111] at 3; *Starstone*, 133 F.4th at 767; *Jet Midwest*, 932 F.3d at 1105; *BouMatic*, 759 F.3d at 791; *Lear*, 353 F.3d at 582–83. Fifth, it alleges Saray has "the ability to issue shares that can be tradeable." See ECF No. [111] at 3; *Starstone*, 133 F.4th at 767; *Jet Midwest*, 932 F.3d at 1105; *BouMatic*, 759 F.3d at 791; *Lear*, 353 F.3d at 582-83.

ECF No. [133] at 11-12.

The Objecting Parties do not offer an alternative test for evaluating whether a foreign entity should be treated as a corporation or unincorporated association that has been recognized by any court. Instead, they point to specific features of SPCs that make them unique[3] and, therefore argue Saray should be treated as an unincorporated entity. ECF No. [134] at 5-9. An SPC "creates one or more portfolios within the company itself[,]" which "are entirely segregated from each other and from the general assets and liabilities of the segregated portfolio company, such that the assets between portfolios are themselves segregated from each[ ]other[.]" *Id.* at 7 (citing Cayman Island Companies Act §§ 216, 221 (2025)). However, as Judge Elfenbein noted, these attributes "support a conclusion that Saray should be treated as a corporation for § 1332(c) purposes, as they describe ways in which SPCs limit the liability of their investors." ECF No. [133] at 12 n.4. The Objecting Parties also point to the fact that the Saray Articles of Association have "distinct shares per portfolio/series[,]" and "contrary to the Report and Recommendation, the transfer of any shares in Saray may not occur without the 'prior consent in writing of the Directors.'" *Id.* at 8 (quoting ECF

---

[3] The Objecting Parties note that none of the cases in which the specific attributes test has been applied analyze SPCs. ECF No. [134] at 5. But the purpose of the specific attributes test is to establish a methodology by which courts may "consider specific aspects of the foreign business entity to determine whether its closest domestic analogue is a corporation versus an LLC or other unincorporated association." *Ekopel*, 717 F. Supp. 3d at 26. That no court has yet conducted this analysis regarding an SPC has no bearing on the applicability or reliability of the test.

No. [125-1] ¶ 72). However, "[e]ven if certain transfers require director consent, United States corporate law does not demand completely unrestricted alienability." ECF No. [141] at 8; *see BouMatic*, 759 F.3d at 791 ("Shares can be bought and sold, subject to restrictions that the business declares. That is a common device in this nation's close corporations too.").

The Objecting Parties also argue that an SPC is most akin to an S-LLC which is "essentially subdivided into separate classes, referred to as series, which may have separate . . . interests, and business purposes." ECF No. [134] at 8 (quoting Shannon L. Dawson, *Series LLC and Bankruptcy: When the Series Finds Itself in Trouble, Will It Need Its Parent to Bail It Out?*, 35 DEL. J. CORP. L. 515, 516 (2010)). Euclid responds that, under the Companies Act, "an SPC is simply 'an exempted company which is registered . . . as a segregated portfolio company.'" ECF No. [141] at 8 (quoting Companies Act §§ 212-13). Nothing in the Companies Act or Saray's Articles of Association "creates a second juridical person at the portfolio level." *Id.* at 9. Contrary to the Objecting Parties' argument that an SPC "can create portfolios or series within itself that are entirely separate business entities . . . and distinct from the business entity itself[,]" ECF No. [134] at 8, Euclid argues that the portfolios are "simply accounts that the directors 'establish . . . to ensure that assets and liabilities are not transferred between Segregated Portfolios or between Segregated Portfolios and the Company's General Assets and General Liabilities, other than at full value[.]'" ECF No. [141] at 9 (quoting ECF No. [125-1] at 10). This aspect of Saray's Articles of Association demonstrates that Saray is a "single incorporated entity whose directors have fiduciary duties to all shareholders, even while shielding each pool of assets from the creditors of another[,]" lending Saray "one of the quintessential 'specific attributes' of a corporation: limited investor liability." ECF No. [141] at 9. The R&R therefore employed the correct test to determine whether Saray should be treated as a corporation or unincorporated association for purposes of diversity jurisdiction and properly concluded that Saray is more like a U.S. corporation. ECF No. [133] at

13. As a citizen of the Cayman Islands, the United Arab Emirates, and Texas,[4] Euclid is not a citizen of the same State as any Defendant and complete diversity exists. *Id.*

### B. Jurisdictional Discovery

The Objecting Parties argue that there is no longer any need for Euclid to conduct jurisdictional discovery because the R&R found that complete diversity existed. ECF No. [134] at 9-10. However, as Judge Elfenbein stated, "if the discovery reveals that the America1 Parties' citizenships would destroy diversity jurisdiction, [Euclid] may decide to move for leave to amend the complaint again so that it can drop them from the lawsuit." ECF No. [133] at 17. Euclid also argues that "the discovery requests go to the heart of the anticipated joinder dispute." ECF No. [141] at 11. Because "[t]he hidden membership structures of the America1 Parties, as business entities, affect both diversity and indispensability," Euclid will need jurisdictional discovery to "decide whether the America1 Parties are indispensable defendants under Fed. R. Civ. P. 19." *Id.* Although the Objecting Parties argue that they "have not contested the allegations regarding the citizenship of the Objecting Parties[,]" ECF No. [134] at 10, the Court "cannot discharge its independent obligation to police subject matter jurisdiction." ECF No. [141] at 11; *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 501 (2006) (stating courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.") Therefore, the need for jurisdictional discovery is not moot.

### C. Merits Discovery

The Objecting Parties argue that any discovery against potential parties is limited to jurisdictional matters and may occur only after a Rule 26 conference now that the Objecting Parties

---

[4] Saray is incorporated in the Cayman Islands, has its principal place of business in the United Arab Emirates, and the members of Euclid's general partner are individuals domiciled in Texas. ECF No. [133] at 13 (citing ECF No. [111] at 2-3).

have been formally added to the suit. ECF No. [134] at 10. Specifically, the Objecting Parties argue that "contrary to Florida law," Euclid "sought merits discovery via subpoena from Bratushev (who was a non-party at the time)." *Id.* at 11. Once Bratushev became a party to the litigation, the Objecting Parties argue, Euclid was no longer permitted to seek discovery from him until they conducted a Rule 26 conference. *Id.*

As an initial matter, the Objecting Parties do not explain why it is "contrary to Florida law" for Euclid to seek merits discovery via subpoena from Bratushev. To the extent the Objecting Parties argue that allowing merits discovery from Bratushev before holding a Rule 26 conference is contrary to the Federal Rules of Civil Procedure, Euclid correctly points out that Rule 26(d)(1) provides an exception to the requirement of Rule 26 conferences: "when authorized by . . . court order." ECF No. [141] at 11 (quoting Fed. R. Civ. P. 26(d)(1)). However, at the time Euclid moved to compel merits discovery against Bratushev, he was not a party to the action. ECF No. [104] at 2. Therefore, at the time the Motion to Compel Merits Discovery was made, Euclid was not required to confer with the Objecting Parties before seeking discovery from them. *See* Fed. R. Civ. P. 26(d)(1). Because courts have the authority to waive the pre-discovery conference requirement and a pre-discovery conference was not required under the Federal Rules at the time Euclid made the Motion, the Objecting Parties have failed to demonstrate that Judge Elfenbein's order granting the Motion to Compel Merits Discovery was clearly erroneous or contrary to law. *Wausau*, 310 F.R.D. at 690.

The Objecting Parties also argue that the information sought in the merits discovery lacks relevance and was in bad faith. ECF No. [134] at 10. They contend that Judge Elfenbein should not have analyzed the Motion to Compel Merits Discovery within the context of the Third Amended Complaint because, at the time Euclid made the Motion to Compel Merits Discovery, the Second Amended Complaint was the operative complaint. *Id.* at 11-12. Because the Second

Amended Complaint "only had claims in regards to the Notes with Amerant[,]" discovery regarding "Bratushev's business relationships with the other Objecting Parties and/or Alliance Defendants that are not related to or involving the Notes with Amerant[] are not relevant to [Euclid's] claims against the Defendants in the Second Amended Complaint." *Id.* at 12. Even assuming, *arguendo*, that the R&R should have analyzed the Motion to Compel Merits Discovery within the context of the Second Amended Complaint, it would not have changed the outcome. Judge Elfenbein concluded that "the information sought is relevant to entities the Third Amended Complaint alleges conspired to interfere with an agreement [Euclid] had with Amerant. *See* ECF No. [111] at 19-26. For that reason, it is relevant to [Euclid's] conversion and tortious interference claims." ECF No. [133] at 18. Indeed, Euclid's claims for conversion and tortious interference appear in both the Second and Third Amended Complaints and include largely the same allegations. *See* ECF Nos. [34] at 15, 17-18; [111] at 19, 21-22. Therefore, the R&R's determination that the information sought is relevant to the claims in the Third Amended Complaint applies with the same force to the Second Amended Complaint. The R&R also noted that "the America1 Parties have not objected based on undue burden." ECF No. [133] at 12. Nor do the Objecting Parties now claim there would be an undue burden if the Motion to Compel Merits Discovery were granted.

The Objecting Parties also argue that Euclid seeks this information for the "improper purpose" of "tak[ing] over those businesses and operat[ing] them and return[ing] them to profitability[.]" *Id.* at 12-13 (quoting ECF No. [11] at 46:11-16). The Objecting Parties have provided no support for their "improper purpose" argument beyond quoting a single phrase from the Hearing in which Euclid's counsel stated, in part:

> The complaint alleges that these entities worked in concert to try to take the loan and prevent Euclid from getting the loan and the loan would then allow Euclid to

11

foreclose on the properties, foreclose on the businesses, and allow Euclid to take over those businesses and operate them and return them to profitability.

ECF No. [110] at 46:11-16.

The transcript makes clear that Euclid's counsel sought to rebut opposing counsel's claim that this is "just a breach of contract dispute[.]" *Id.* at 46:2. As Euclid's counsel stated:

> there are also tortious interference claims against the Gitmans and against Alliance Metals, there are conversion claims against those entities, and that's why these allegations against the other parties conspiring to try to take these assets away from Euclid partners are relevant, and that is why those allegations are in the complaint.

*Id.* at 46:4-10. Therefore, the Objecting Parties have provided no evidence that the discovery was sought in bad faith or that the R&R's grant of Euclid's Motion to Compel Merits Discovery was clearly erroneous or contrary to law. *Wausau*, 310 F.R.D. at 690.

## IV.    CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The R&R, **ECF No. [133],** is **ADOPTED IN FULL.**

2. The Objecting Parties' Objections, **ECF No. [134],** are **OVERRULED.**

**DONE AND ORDERED** in Chambers at Miami, Florida on September 19, 2025.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to: Counsel of Record