**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 1:25-CV-20647-BB/Elfenbein**

EUCLID TURNAROUND OPPORTUNITY
FUND LP,

*Plaintiff*,

*vs*.

AMERANT EQUIPMENT FINANCE, A
DIVISION OF AMERANT BANK, N.A.,
ET AL.,

*Defendants*.
_______________________________________/

**PLAINTIFF'S MOTION TO DISMISS THE**
**ALLIANCE DEFENDANTS' AMENDED COUNTERCLAIM**

Plaintiff Euclid Turnaround Opportunity Fund LP moves, pursuant to Federal Rule of Civil Procedure 12(b)(6) and 12(f), to strike and dismiss the claims asserted against it by Defendants/Counterclaim-Plaintiffs Alliance Metals LLC ("Alliance Metals"), Technocon International, Inc. ("Technocon"), Alliance Metals Alabama, LLC ("Alliance Alabama"), Larry Y. Gitman ("L. Gitman"), and Jacob Gitman ("J. Gitman") (collectively, the "Alliance Defendants") in the First Amended Counterclaim (ECF No. 281).[1] The claims against Euclid—fraudulent inducement (Count I), fraudulent concealment (Count II), abuse of process (Count III), tortious interference with a business relationship (Count IV), and aiding and abetting a breach of fiduciary duties (Count V)—all fail as a matter of law and should be dismissed for several reasons.

First, he Amended Counterclaim is procedurally improper and should be stricken. The Alliance Parties filed it on April 20, 2026—nearly two months after their original Counterclaim (ECF No. 230) was filed on February 23, 2026, and nearly a month after Euclid moved to dismiss the original Counterclaim under Rule 12(b)(6) on March 23, 2026 (ECF No. 255). Both 21-day windows for amendment as a matter of course under Federal Rule of Civil Procedure 15(a)(1) had closed, and the Alliance Parties neither sought leave of Court nor obtained Euclid's written consent, as Rule 15(a)(2) requires. The Amended Counterclaim should be stricken on that basis alone.

Second, Florida's litigation privilege blocks all five claims. The factual allegations against Euclid center on Euclid's pursuit of this litigation and a related case in Florida state court. Such conduct cannot support the Alliance Defendants' claims, because Florida's litigation privilege

[1] This motion is filed only on behalf of Plaintiff Euclid. While several claims were also asserted against Howard Siegel and Adam Siegel in their individual capacities, their responses are not due until May 18, 2026, and both parties reserve all their rights to raise all defenses, including challenging personal jurisdiction.

provides litigants "absolute immunity" for "any act occurring during the course of a judicial proceeding." *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Ins. Co.*, 639 So. 2d 606, 608 (Fla. 1994). Once allegations concerning litigation conduct are excised from the Amended Counterclaim, what remains are bare legal conclusions unsupported by any adequately pled tortious act.

Third, the Alliance Parties' tortious interference claim suffers from the same flaws as the SB Defendants' claim does: it fails to allege any cognizable damages from the alleged interference, and fails to allege that Euclid used any improper means to interfere with the Alliance Parties' business relationship.

Fourth, the abuse-of-process claim fails for the same reasons as the SB Defendants' claim does: it does not allege that Euclid's judicial process was used to accomplish anything other than what process is designed for.

Fifth, the claim for aiding and abetting breach of fiduciary duty must be dismissed on multiple, independent grounds. The Amended Counterclaim now invokes Florida law, but Alabama law applies, as the Alliance Parties initially asserted, because Wayne Perry's alleged duties arose entirely from his role as Vice President and Plant Manager of the Leighton, Alabama smelting facility, the alleged confidential information concerned operations at that Alabama facility, and the alleged disclosure and breach occurred there. Under Alabama law, no cause of action exists for aiding and abetting breach of fiduciary duty—federal courts sitting in Alabama have consistently declined to graft this common law claim onto state law, as doing so would create a new, unauthorized area of Alabama law. And even under Florida law, the claim still fails because the Amended Counterclaim does not it adequately allege Euclid's actual knowledge of any specific

breach (as opposed to general knowledge of duties) or substantial assistance amounting to an independent tortious act.

Finally, the Alliance Parties' fraud claims are legally deficient. The Alliance Parties cannot allege an actionable duty to disclose, because the allegations concern a commercial, arm's-length transaction between sophisticated parties, and the Alliance Parties never allege that they asked Euclid for the information they now claim was suppressed. The Alliance Parties also cannot allege any inducement, because the Alliance Parties admit that they approached Euclid and voluntarily shared information from the start. Their disclosure was not a change in position induced by Euclid's subsequent representations. In addition, Euclid's alleged statements—such as an intent to work collaboratively—are categorized as puffery, opinions, or predictions of future events, which cannot support a fraud claim under Alabama or Florida law. And the Amended Counterclaim does not contain any plausible allegations of cognizable damages.

For these reasons and those discussed below, the Court should dismiss the Alliance Parties' frivolous claims against Euclid.

## BACKGROUND

The Alliance Parties' five-count Amended Counterclaim recasts a failed commercial negotiation into a grab bag of tort theories, but its own allegations show only that, during unspecified "2024" discussions, ***Alliance*** approached Euclid about a possible turnaround transaction and that Euclid represented that any deal would require cooperation and would seek to preserve value for stakeholders. (ECF No. 281 ¶¶ 12–13.) Alliance alleges that it chose to provide confidential business information and access to personnel, including, "internal restart projections, an equipment appraisal, a list of debts, and detailed technical information." (*Id.* ¶¶ 14–15.) The Amended Counterclaim then asserts, at a high level of generality, that Euclid never disclosed it

was also considering acquiring Amerant's debt position and using that leverage to pursue a more adversarial transaction. (*Id.* ¶¶ 15–17.) Notably, the Amended Counterclaim does not allege that the Alliance Defendants asked Euclid to disclose such information.

Alliance further alleges that Euclid entered into a consulting arrangement with Wayne Perry on or around January 16, 2025, paying him at least $5,000 while Perry was still serving as Vice President and plant manager for Alliance. (*Id.* ¶¶ 18–19.) But the Amended Counterclaim does not allege that Perry was subject to any exclusive employment agreement, non-compete, anti-moonlighting provision, or other contractual restriction that prohibited him from engaging in outside consulting work. Instead, it alleges only that Perry owed fiduciary duties and obligations of confidentiality by virtue of his role. (*Id.* ¶ 20.) On that basis, Alliance claims the consulting arrangement created a conflict and induced Perry to act contrary to those duties. (*Id.* ¶¶ 21–25.) That is a far cry from alleging a breached exclusive relationship or a contractual prohibition on outside work.

With respect to the litigation conduct, the Alliance Parties allege that after Amerant elected to sell the loan documents to a different buyer at a higher price, the Euclid Defendants filed this action and immediately pursued multiple emergency motions for temporary restraining orders and preliminary injunctions against the Alliance Parties. (*Id.* ¶¶ 79–80.) The Alliance Parties contend that the Euclid Defendants knew at all times that the Alliance Parties were borrowers, guarantors, and property owners—not custodians of the loan documents—and that injunctive relief against them was not legally available (*id.* ¶¶ 82–83), even though this Court has concluded otherwise. They allege the emergency motion practice was a "sham" from the outset, "objectively baseless," and not designed to obtain legitimate relief but was instead undertaken to disrupt and destabilize the Alliance Parties' developing arrangements with SB Ecliptica and the SB-affiliated entities,

impose immediate litigation costs, and gain coercive commercial leverage. (*Id.* ¶¶ 84–87.) After forcing expedited briefing responses, the Euclid Defendants withdrew their emergency motions pursuant to a stipulation reached solely with Amerant. (*Id.* ¶ 82.)

Based on these allegations, the Alliance Parties assert the following claims: (1) fraudulent inducement, alleging the Euclid Defendants' representations of cooperative intent were false when made because they simultaneously planned a unilateral hostile acquisition (*id.* ¶¶ 48–62); (2) fraudulent concealment, alleging the Euclid Defendants created a duty to disclose their adverse strategy and their financial relationship with Perry but concealed both (*id.* ¶¶ 63–77); (3) abuse of process, alleging the repeated emergency injunction filings against the Alliance Parties were filed for the improper purpose of disrupting the Alliance-SB transaction rather than to obtain legitimate injunctive relief (*id.* ¶¶ 79–93); (4) tortious interference with a business relationship, premised on the Euclid Defendants' consulting arrangement with Perry while he was still employed by the Alliance Parties (*id.* ¶¶ 95–110); (5) aiding and abetting Perry's breach of his fiduciary duties by entering into and funding the consulting arrangement with knowledge of his obligations to the Alliance Parties (*id.* ¶¶ 112–22).

While the Alliance Parties seek compensatory, consequential, and punitive damages on all counts, as well as attorneys' fees, they do not describe or explain how Euclid's alleged conduct—particularly its non-litigation conduct—caused them to suffer cognizable harm.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint—or counterclaim—must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While a court

must accept factual allegations as true, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "A district court may properly dismiss a complaint if it rests only on conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts." *Cox v. Nobles*, 15 F.4th 1350, 1357 (11th Cir. 2021) (internal quotation marks omitted).

The affirmative defense of Florida's litigation privilege may be considered and "adjudicated on a motion to dismiss if the applicability of the privilege can be clearly discerned from the face of the complaint." *LatAm Investments, LLC v. Holland & Knight, LLP*, 88 So. 3d 240, 245 (Fla. 3d DCA 2011); *see Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1274 (11th Cir. 2004) (affirming dismissal of state law claims based on Florida's litigation privilege because "the complaint affirmatively and clearly shows the conclusive applicability of the defense to bar the action") (citation omitted).

## ARGUMENT

### I. The Amended Counterclaim Is Procedurally Improper and Should Be Stricken.

As a threshold matter, the First Amended Counterclaim should be stricken under Federal Rule of Civil Procedure 12(f). Federal Rule of Civil Procedure 15(a)(1) permits a party to amend its pleading "once as a matter of course" only within 21 days after serving it, or—if the pleading is one to which a responsive pleading is required—within 21 days after service of a responsive pleading or a motion under Rule 12(b), (e), or (f), "whichever is earlier." Outside those windows, a party "may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The Alliance Parties met none of these conditions.

The original Counterclaim was filed on February 23, 2026. (ECF No. 230.) Euclid's motion to dismiss the Counterclaim under Rule 12(b)(6) was filed on March 23, 2026. (ECF No. 255.) The Alliance Parties did not file the First Amended Counterclaim until April 20, 2026—fifty-six days after their original Counterclaim and twenty-eight days after Euclid's Rule 12(b)(6) motion. Both 21-day windows under Rule 15(a)(1) had closed. The Alliance Parties did not seek leave of Court before filing the Amended Counterclaim, and Euclid did not provide written consent to the amendment. The Amended Counterclaim is therefore unauthorized under Rule 15.

"[S]triking an improper amended pleading filed without leave of court is appropriate and necessary to enforce Rule 15(a)(2)." *Gibson v. Idleburgh*, No. 6:24-CV-683-JSS-NWH, 2025 WL 2676412, at *2 (M.D. Fla. Sept. 18, 2025) (internal quotation marks omitted). Courts in this District have repeatedly applied that rule to strike unauthorized pleadings. *See, e.g.*, *Veritas Pers. Services, Inc. v. ADP Totalsource, Inc.*, No. 1:19-CV-22435-UU, 2019 WL 11506035, at *2 (S.D. Fla. Dec. 27, 2019); *Florio v. Success Agency LLC*, No. 17-80557-CV, 2017 WL 8897130, at *6 (S.D. Fla. Oct. 30, 2017); *Rubinstein v. Keshet Inter Vivos Tr.*, No. 17-61019-CIV, 2017 WL 7792570, at *3 (S.D. Fla. Oct. 18, 2017); *Solis v. Glob. Acceptance Credit Co., L.P.*, No. 13-CV-23060, 2014 WL 12649792, at *4 (S.D. Fla. June 25, 2014), *aff'd*, 601 Fed. Appx. 767 (11th Cir. 2015).

The Court, therefore, should strike the Amended Counterclaim and rule on Euclid's motion to dismiss the original Counterclaim (ECF No. 255), which the Court previously denied as moot following the Alliance Parties' unauthorized filing of their Amended Counterclaim (ECF No. 282). To the extent the Court instead elects to consider the Amended Counterclaim, the additional arguments below establish that it should be dismissed under Rule 12(b)(6).

## II. The Alliance Parties' Counterclaims Are Barred By Florida's Litigation Privilege.

For the same reasons set forth in Euclid's motion to dismiss the SB Defendants' Counterclaims, which Euclid incorporates by reference, Florida's litigation privilege bars all the claims asserted by the Alliance Parties. While a few of the Alliance Parties' claims appear to rely on Alabama law, the litigation occurred in Florida courts, and thus Florida has the most significant relationship to the application of the privilege. *See Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 694 (11th Cir. 2016) (stating that a federal court must apply the choice-of-law principles of the state in which it sits, and describing Florida's doctrine for resolving conflict-of-law questions). Regardless, there likely is no conflict of law, because in Alabama, as in Florida, "[p]ertinent statements made in the course of judicial proceedings are absolutely privileged," and "[a]bsolutely privileged statements, no matter how false or malicious, cannot be made the basis of civil liability." *Drees v. Turner*, 45 So. 3d 350, 358 (Ala. Civ. App. 2010).

Because the Alliance Parties' claims all rest on alleged conduct immunized by the litigation privilege—and the Alliance Parties make no effort to separately assert claims against Euclid without relying on litigation conduct, particularly as to causation—the claims must be dismissed.

## III. The Alliance Parties' Tortious Interference Claims Fail as a Matter of Law.

The elements of tortious interference with a contract or business relationship require: (1) "the existence of a business relationship or contract"; (2) "knowledge of the business relationship or contract on the part of the defendant"; (3) "an intentional and unjustified interference with the business relationship or procurement of the contract's breach" by the defendant; and (4) "damage to the plaintiff as a result of the interference." *Al Rushaid Petroleum Inv. Co. v. Siemens Energy Inc.*, 159 F.4th 887, 894 (11th Cir. 2025) (quotations omitted). The Alliance Parties' tortious interference claims fail because they cannot satisfy the third or fourth elements of the claim.

The third element—unjustified interference—generally requires the interfering defendant "be a third party, a stranger to the business relationship." *Palm Beach Cnty. Health Care Dist. v. Pro. Med. Educ., Inc.*, 13 So. 3d 1090, 1094 (Fla. 4th DCA 2009) (quoting *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 742 So. 2d 381, 386 (Fla. 4th DCA 1999)). The Alliance Parties' own allegations establish that Euclid was not a stranger to the business relationships underlying the tortious interference claims. As the Alliance Parties are forced to acknowledge, Euclid "pursued a discounted purchase of the defaulted loans from Amerant." (ECF No. 281 ¶ 17.) Likewise, the Alliance Parties concede that Euclid entered into a consulting agreement with Perry. (*Id.* ¶ 19.) So, according to the Alliance Parties' own allegations, Euclid had "a potential financial interest in how [the underlying] contract [was] performed," and thus was "not a stranger to [the] business relationship." *Pro. Med. Educ.*, 13 So. 3d at 1094.

To be sure, there is an exception to the stranger requirement, under which "a non-stranger's conduct still may be actionable in a tortious interference claim" when a non-stranger uses "improper means," such as "threats, intimidation and conspiratorial conduct, as well as physical violence, misrepresentations [to customers or suppliers], illegal conduct or threats of illegal conduct." *Al Rushaid Petroleum Inv. Co.*, 159 F.4th at 896 (quotations omitted). But to invoke the "improper means" exception, the Alliance Parties must satisfy "Rule 9(b)'s heightened pleading standard." *Id.* The Alliance Parties cannot come close to meeting that requirement, because they do not allege that Euclid engaged in any misconduct with any measure of particularity—aside from conduct immunized by the litigation privilege. They do not allege, for example, the timing or substance of any misrepresentations that constituted interference.

The Amended Counterclaim's newly added detail—that the consulting agreement was entered "on or around January 16, 2025," that Perry was paid "at least $5,000," and that he held

the title of "Vice President and Plant Manager" (ECF No. 281 ¶¶ 18–25, 99–101)—does not transform the alleged conduct into "improper means." The kinds of conduct that satisfy the exception are "threats, intimidation and conspiratorial conduct, as well as physical violence, misrepresentations [to customers or suppliers], illegal conduct or threats of illegal conduct." *Al Rushaid*, 159 F.4th at 896 (internal quotation marks omitted). Hiring a consultant who is otherwise free to perform outside work does not fall within that list. The added words—"covertly," "secretly," "procured through improper means" (ECF No. 281 ¶¶ 21, 99, 101)—are conclusory labels that do not satisfy Rule 9(b). The Alliance Parties still do not allege any contractual restriction prohibiting Perry from accepting outside consulting work, any misrepresentation by Euclid to a third party, or any illegal conduct in connection with hiring him.

Finally, the Alliance Parties' tortious interference claim should be dismissed because they fail "to plead facts permitting a reasonable inference that any alleged interference with a business relationship . . . caused [them] injury." *Aldabe v. Intact Ins. Group USA LLC*, No. 3:25-CV-00166, 2026 WL 411806, at *11 (M.D. Fla. Feb. 13, 2026). The Alliance Parties' "injury allegations are conclusory and do not plausibly plead causation," as they "fail[] to allege facts connecting any specific [non-immunized] act by [Euclid] to the losses [they] claim[] to have suffered." *Id.* The Amended Counterclaim's new allegations that Perry "intentionally reduc[ed] production output on certain days" and "abruptly halt[ed] production during active runs" (ECF No. 281 ¶¶ 41, 107) do not cure that defect. Those allegations describe acts taken by Perry, not Euclid, and the Amended Counterclaim alleges no facts plausibly tying any specific production decision to Euclid's alleged consulting agreement, much less causing any resulting loss. Count IV, therefore, should be dismissed.

## IV. The Alliance Parties' Abuse of Process Claim Fails as a Matter of Law.

For the same reason set forth in Euclid's motion to dismiss the SB Defendants' Counterclaim, which Euclid incorporates by reference, the Alliance Parties' abuse of process claim should be dismissed: the Alliance Parties fail to state an abuse-of-process claim because every allegation of "abuse" reduces to Euclid filing suit, seeking relief in this action, and entering into the Joint Stipulation to preserve the status quo while the suit is pending. The Amended Counterclaim's newly inserted labels—that the emergency motions were "sham[s] from the outset and objectively baseless," that "no reasonable litigant could have realistically expected success on the merits," and that the filings constituted a "sham and a perverted and improper use of judicial process" (ECF No. 281 ¶¶ 31, 33, 80, 83, 86)—do not change the analysis. "Even the wrongful or malicious filing of a lawsuit does not state a cause of action for abuse of process." *SE Prop. Holdings, LLC v. Fed. Deposit Ins. Corp.*, No. 3:13-CV-6, 2014 WL 12634824, at *2 (N.D. Fla. May 30, 2014).

## V. The Claim for Aiding and Abetting Breach of Fiduciary Duty Should Be Dismissed.

The Alliance Parties claim that Wayne Perry "owed them fiduciary duties" by virtue of his role as "plant manager" of the "aluminum smelting facility in Leighton, Alabama," operated and owned by Alliance Metals, and sitting on land owned by Alliance Metals Alabama (ECF No. 281 ¶¶ 10, 11, 18–20, 112); that Mr. Perry breached that duty by sharing confidential information with Euclid (*id.* ¶ 114); and that Euclid provided "substantial assistance and encouraged [his] breach" by entering into the consulting agreement with him "with the Express intent of obtaining" confidential information about the Alliance Parties (*id.* ¶ 116). In Count V, the Alliance Parties attempt to assert a claim for aiding and abetting breach of fiduciary duty, now relying on Florida law. (*Id.* ¶ 112.) The Alliance Parties presumably switched from Alabama law to Florida law

because, as explained in Euclid's initial motion to dismiss, no cause of action exists under Alabama law for aiding and abetting breach of fiduciary duty, and absent state decisions "expressly authoriz[ing]" such a claim, this Court should not "graft one onto [Alabama] law." *Tershakovec v. Ford Motor Co., Inc.*, 79 F.4th 1299, 1313 (11th Cir. 2023).

The Alliance Parties were right the first time in suggesting that Alabama law applies to this claim, because Perry's alleged duties arose from his role as Vice President and Plant Manager at the Alabama facility, the alleged confidential information concerned operations in Alabama, and the alleged disclosures and breach occurred there. (ECF No. 281 ¶¶ 18–20, 112.) A federal court sitting in diversity applies the choice-of-law rules of the state in which it sits. *See Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941). Because the claim was brought in the Southern District of Florida, Florida's choice-of-law rules govern. *Id.* Florida, in turn, applies the most significant relationship test from the Restatement (Second) of Conflict of Laws for tort claims. *See Trumpet Vine Investments, N.V. v. Union Capital Partners I, Inc.*, 92 F.3d 1110, 1115 (11th Cir. 1996); *Bishop v. Florida Specialty Paint Co.*, 389 So.2d 999, 1001 (1980). Applying this standard, Florida courts have held that the law of the place where employees of a corporate plaintiff works governs similar claims against third parties who hired or entered into relationships with the employee, because that is "the place where the conduct causing the injury occurred." *Blue-Grace Logistics LLC v. Fahey*, 653 F. Supp. 3d 1172, 1183 (M.D. Fla. 2023); *see Default Proof Credit Card Sys., Inc. v. State St. Bank & Tr. Co.*, 753 F. Supp. 1566, 1571 (S.D. Fla. 1990) (applying the law of the place where "the alleged use and acquisition of Plaintiff's purported confidential information occurred"). That one of the Alliance entities was organized under Florida law does not control the analysis, because the claim for "aiding and abetting [is] alleged against a

third party and [is] necessarily outside of its internal affairs." *Aquent LLC v. Stapleton*, 65 F. Supp. 3d 1339, 1350 n.12 (M.D. Fla. 2014).

Applying Alabama law to the claim requires dismissal. Two district courts sitting in Alabama have concluded that "Alabama law does not recognize the common law cause of action of 'aiding and abetting breach of fiduciary duty[.]'" *Cont'l Cas. Co. v. Compass Bank*, 2006 WL 566900, at *12 (S.D. Ala. Mar. 6, 2006); *Bradley v. Franklin Collection Serv., Inc.*, No. 5:10-CV-01537-AKK, 2011 WL 13134961, at *14 (N.D. Ala. Mar. 24, 2011) (dismissing aiding and abetting claim as not recognized under Alabama law). This Court should follow the decisions of the Alabama federal courts, not only because they generally are "better schooled in and more able to interpret the laws of their respective States," *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 500 (1985),[2] but because the decisions have been reaffirmed. *See Physiotherapy Assocs., Inc. v. ATI Holdings, LLC*, 2019 WL 4415567, at *7 (N.D. Ala. Sept. 16, 2019). Indeed, post-*Tershakovec*, the caution displayed by the Northern District of Alabama proved even more prescient: "[r]ecognizing aiding and abetting breach of a fiduciary duty as a cause of action would not simply further develop an unresolved area of Alabama law but would instead create a *new* area of Alabama law; the court declines to do so." *Id*. This Court should likewise dismiss the unfounded claim under Alabama law.

Even if the Court applied Florida law, the claim would still fail. Under Florida law, a "cause of action for aiding and abetting the breach of a fiduciary duty requires a plaintiff to establish: 1)

---

[2] *Whitewater W. Indus., Ltd. v. Alleshouse*, 981 F.3d 1045, 1051 (Fed. Cir. 2020) ("[W]e give weight to decisions of federal courts that are 'better schooled in' the law of the particular State involved."); *Factors Etc., Inc. v. Pro Arts, Inc.*, 652 F.2d 278, 281 (2d Cir. 1981) ("It has frequently been observed that a court of appeals should give considerable weight to state law rulings made by district judges, within the circuit, who possess familiarity with the law of the state in which their district is located.").

a fiduciary duty on the part of a primary wrongdoer; 2) a breach of that fiduciary duty; 3) knowledge of the breach by the alleged aider and abettor; and 4) the aider and abettor's substantial assistance or encouragement of the wrongdoing." *Fonseca v. Taverna Imports, Inc.*, 212 So. 3d 431, 442 (Fla. 3d DCA 2017) The Amended Counterclaim does not satisfy the third or fourth elements. While it alleges that Perry "disrupted plant-level logistics, undermined workforce stability and morale, and caused inefficiencies and breakdowns in ordinary business operations" (ECF No. 281 ¶ 41), the Amended Counterclaim pleads no facts connecting any of this conduct to Euclid or establishing Euclid's knowledge of it.

As to Euclid, the allegations show, at most, that Euclid hired Perry as a consultant and paid him $5,000. (*Id.* ¶ 21.) That is insufficient to satisfy "substantial assistance" and "knowledge" under Florida law. *See Lawrence v. Bank of Am., N.A.*, 455 Fed. Appx. 904, 907 (11th Cir. 2012) (affirming dismissal of aiding and abetting claim where allegations of "routine" business practices did not establish substantial assistance or knowledge of wrongdoing); *Grace Cmty. Dev. Corp. of Florida, Inc. v. Wells Fargo Bank N.A.*, No. 22-CV-60356-RS, 2023 WL 3171962, at *4 (S.D. Fla. Mar. 22, 2023) (dismissing claim for aiding and abetting breach of fiduciary duty because plaintiff "fail[ed] to adequately allege that Defendant had actual knowledge of [wrongdoer's] breach of fiduciary duty when he misappropriated funds"); *B-Smith Enterprises, LP v. Bank of Am., N.A.*, No. 22-11383, 2023 WL 2034419, at *2 (11th Cir. Feb. 16, 2023) (affirming dismissal because plaintiff alleged "no facts demonstrating plausibly that [defendant] had actual knowledge that [wrongdoer] was breaching that fiduciary duty"). The conclusory labels "substantial assistance," "encouraged," and "through improper means" cannot fill the gap. *See Iqbal*, 556 U.S. at 678. The claim therefore fails under Florida law as well.

## VI. The Counterclaim Fails to State Fraud Claims.

The Alliance Parties assert claims for fraudulent inducement (Count I) and fraudulent concealment (Count II). At bottom, both are based on Euclid's alleged "represent[ation] that any transaction would require the participation of both Amerant and the Alliance Parties and that the Euclid Defendants intended to work collaboratively to restart operations and preserve value for stakeholders." (ECF No. 281 ¶ 48; *see id* ¶ 64 (same alleged representation in fraudulent concealment count).) Either as an affirmative misrepresentation or as a failure to disclose, the Alliance Parties condemn Euclid's allegedly simultaneous pursuit of a unilateral strategy to acquire Alliance's debt from Amerant. They seek damages for the disclosure of confidential information, the alleged disruption to their restructuring efforts and operations, and for the incursion of attorneys' fees. The Amended Counterclaim fails to state claims for fraudulent inducement and concealment.

***For starters***, with respect to fraudulent concealment, Euclid's alleged failure to disclose the information identified is not actionable absent a duty to disclose. "[M]ere silence as to a material fact is not fraud unless the defendant has a duty to disclose it." *Gewin v. TCF Asset Mgmt. Corp.*, 668 So. 2d 523, 528 (Ala. 1995); *accord Garofalo v. Proskauer Rose LLP*, 253 So. 3d 2, 7 (Fla. 4th DCA 2018) ("Fraud based upon a failure to disclose material information exists only when there is a duty to make such a disclosure."). No *facts* alleged in the Amended Counterclaim establish a duty to disclose the information underlying the claim.

First, where, as here, "both parties to a transaction are knowledgeable, are capable of protecting their own interests, and are dealing at arm's length, no duty to disclose particular information exists ***unless*** the information is ***actually requested***." *Ladas Land & Dev., Inc. v. Merritt & Walding Props., L.L.P.*, 978 So. 2d 55, 59 (Ala. Civ. App. 2007) (emphasis added).

Despite the many barebone allegations attacking Euclid's failure to disclose one piece of information or another, the Amended Counterclaim alleges neither the Alliance Parties' lack of sophistication nor that they *requested, asked, or demanded* the disclosure of the information now complained about. *See Gewin*, 668 So. 2d at 528 (no duty to disclose among "sophisticated businessmen dealing at arm's length" and "not in a position of unequal bargaining power"; noting "plaintiffs never asked [defendant]" for the specific information at issue). Without setting forth the requests, if any, posed by the Alliance Parties that went unanswered, the Amended Counterclaim cannot state a duty to disclose. *See Freightliner, L.L.C. v. Whatley Cont. Carriers, L.L.C.*, 932 So. 2d 883, 892 (Ala. 2005) (explaining that in commercial transactions "a ***bright line rule generally applies***: The parties have no general obligation to disclose, but each has an affirmative duty to respond 'truthfully and accurately' to ***direct questions from the other***.") (emphasis added); *see id.* at 893 ("a disclosing party cannot be punished for fraudulent suppression unless the questioning party articulates with reasonable clarity the particular information it desires.").

Second, the Alliance Parties and Euclid are two businesses that were involved in an arms-length transaction *initiated* by the Alliance Parties. (ECF No. 281 ¶ 12 ("Alliance approached the Euclid Defendants[.]")). In that situation, "no obligation to disclose information" arose "absent a confidential relationship or other particular circumstance giving rise to the duty." *Brickhouse Cap., LLC v. Coastal Cryo AL, LLC*, 393 So. 3d 467, 476 (Ala. 2023); *R.J. Reynolds Tobacco Co. v. Whitmire*, 260 So. 3d 536, 539 (Fla. 1st DCA 2018) ("In a commercial transaction in which 'the parties are dealing at arm's length, a fiduciary relationship does not exist because ***there is no duty imposed on either party to protect or benefit the other***.'") (emphasis added). The Amended Counterclaim is replete with conclusory allegations that Euclid took "confidential" information, and that Mr. Perry had a fiduciary relationship with the Alliance Parties. *See, e.g.*, ECF No. 281

¶¶ 19, 23 (about Mr. Perry). But noticeably absent is any allegation that *Euclid* had a "confidential" or "fiduciary" relationship with the Alliance Parties, much less any factual allegations to satisfy the federal pleading standards. Euclid therefore had no duty to disclose. *Brickhouse*, 393 So. 3d at 476 (no duty to disclose where plaintiffs did "not allege, and the record does not show, that a confidential or fiduciary relationship existed between the parties").

Third, the Amended Counterclaim contains no other facts from which this Court could find a duty to disclose. To determine whether such a duty existed, a trial court generally considers various factors. *Freightliner*, 932 So. 2d at 891 (listing factors). In a commercial transaction involving sophisticated parties, however, "Alabama law ***presumes*** that the parties are capable of handling their own affairs and guarding their interests by asking reasonably specific, direct questions that will satisfy their need for information. The parties decide what information they need, and the law protects their rights to receive it." *Id.* at 892 (emphasis added) (quoting *Shutter Shop, Inc. v. Amersham Corp.*, 114 F. Supp. 2d 1218, 1225 (M.D. Ala. 2000)). "Applying this law to the facts of this case, . . . without a specific inquiry by [the Alliance Parties], [Euclid] clearly had no duty to disclose any information [identified in the Amended Counterclaim]." *Id.* at 892. Because the Amended Counterclaim does not allege that Euclid and the Alliance Parties were "fiduciaries, this duty [to disclose] could ***only have arisen*** in response to [the Allinace Parties'] request for information." *Shutter Shop*, 114 F. Supp. 2d at 1225. As already explained, no such allegation exists, and Count II must fail.

***Next***, with respect to fraudulent inducement, the Amended Counterclaim fails to state that the Alliance Parties were *actually induced* to give up confidential information or that they suffered any actual damages as a result of such inducement. To state a claim for fraudulent inducement, a plaintiff must plead: "(1) a false statement concerning a material fact; (2) the representor's

knowledge that the representation is false; (3) an intention that the representation induced another to act on it; and (4) consequent injury by the party acting in reliance on the representation."[3] *Dziegielewski v. Scalero*, 352 So. 3d 931, 934 (Fla. 5th DCA 2022). In both Alabama and Florida, "[r]eliance requires that the misrepresentation ***actually induced*** the injured party to ***change its course of action***." *Exxon Mobil Corp. v. Alabama Dep't of Conservation & Nat. Res.*, 986 So. 2d 1093, 1116 (Ala. 2007) (emphasis added); *see, e.g.*, *GlobeTec Const., LLC v. Custom Screening & Crushing, Inc.*, 77 So. 3d 802, 803 (Fla. 3d DCA 2011) (the fraudulent act must induce the contract formation).

Here, the Alliance Parties do not plausibly allege that they disclosed confidential information due to Euclid's alleged misrepresentations. In their initial Counterclaim, the Alliance Parties conceded that they "voluntarily shared" their confidential information with the Euclid Parties (ECF No. 230 ¶ 129), which Jacob Gitman later confirmed at his deposition. When Euclid argued that this concession eviscerated their fraudulent inducement claim (ECF No. 255), however, the Alliance Parties changed course in their Amended Counterclaim and alleged that Euclid's unspecified comments about intending to pursue a cooperative restructuring somehow induced the Alliance Parties to disclose their confidential information. (ECF No. 281 ¶ 14.) Aside from raising serious Rule 11 concerns, the Alliance Parties' new allegations remain insufficient, because the representations challenged in the Amended Counterclaim are not statements concerning material facts. "[I]n the normal business transaction a person should not rely on such ephemeral matters as an opposing party's opinions, judgments, or legal views[.]" *Chino Elec., Inc.*

[3] Alabama contains nearly identical elements: "1) a false representation (2) of a material existing fact (3) *reasonably relied upon by the plaintiff* (4) who suffered damage as a proximate consequence of the misrepresentation." *Exxon Mobil Corp. v. Alabama Dep't of Conservation & Nat. Res.*, 986 So. 2d 1093, 1114 (Ala. 2007).

*v. U.S. Fid. & Guar. Co.*, 578 So. 2d 320, 323 (Fla. 3d DCA 1991). "[S]tatements of opinion amounting to nothing more than 'puffery' ***or predictions as to events to occur in the future*** are not statements concerning material facts upon which individuals have a right to act and, therefore, will not support a fraud claim." *Fincher v. Robinson Bros. Lincoln-Mercury*, 583 So. 2d 256, 259 (Ala. 1991) (emphasis added).

In this case, the alleged representations about how any transaction "***would require***" both Amerant and the Alliance Parties, and that Euclid "***intended to work collaboratively*** to restart operations and preserve value" (ECF No. 281 ¶ 48) (emphasis added), are non-actionable statements of opinions, judgments, and predictions of future events. *See, e.g.*, *Fincher v. Robinson Bros. Lincoln-Mercury*, 583 So. 2d 256, 258 (Ala. 1991) (holding statements that Sable was "fine car," that "would be dependable and reliable and that it would give him good service," that it "was well-suited for his purposes," and that it "was well and properly constructed" were not actionable); *BellSouth Mobility, Inc. v. Cellulink, Inc.*, 814 So. 2d 203, 217 (Ala. 2001) (holding statements that plaintiff and defendant "were 'partners' and that ***our relationship was a 'long term partnership'***"; that defendant was "***totally committed to our long term partnership***"; and that defendant was "***committed to its agents***" were not actionable) (emphasis added). The Alliance Parties do not allege any facts satisfying Rule 9's specificity requirements establishing that Euclid made any actionable misrepresentations of material fact on which it could justifiably rely. *See Maunsell v. Am. Gen. Life and Accident Ins. Co.*, 707 So. 2d 916, 917 (Fla. 3d DCA 1998) (holding that promises of a future promotion and the hiring of additional staff are not actionable as fraud); *Sleight v. Sun and Surf Realty, Inc.*, 410 So. 2d 998, 999 (Fla. 3d DCA 1982) ("Florida law is well-settled that a misrepresentation must ordinarily relate to a past or existing fact to be the basis of a claim for relief sounding in fraud. A false statement amounting to a promise to do something in

the future is not actionable fraud.") (internal citation omitted); *Zarrella v. Pac. Life Ins. Co.*, 755 F. Supp. 2d 1231, 1237 (S.D. Fla. 2011) ("Fraud must be based on material fact, not on a promise or a prediction of future events.").

Finally, in either fraud theory, the Alliance Parties fail to state cognizable, actual damages. The Alliance Parties allege, as damages, the disclosure of confidential and sensitive business information. Again, the Alliance Parties admit they "approached the Euclid Defendants" from the outset. (ECF No. 281 ¶ 12.) The Amended Counterclaim does not set forth what additional confidential information, if any, was disclosed as a result of Euclid's alleged subsequent misrepresentations. Likewise, the Amended Counterclaim does not plausibly allege how the disclosure of this information harmed the Alliance Parties, aside from the resulting litigation, which falls squarely within the litigation privilege.

The Alliance Parties also claim disruption of restructuring efforts and internal operational harm, but such allegations are conclusory. Moreover, the Alliance Parties had already defaulted on the note and were concededly experiencing financial distress, which is why they reached out to Euclid in the first instance. (ECF No. 281 ¶ 12.) Euclid's acquisition of the note and attempts to foreclose cannot be legally cognizable damages when such measures were *legal* and *contractual* rights. *See Exxon Mobil*, 986 So. 2d at 1117 (holding no actual damages suffered given existence of "contractual recourse").

For these reasons, the Counterclaim fails to state causes of action for fraudulent inducement (Count I) and concealment (Count II).

## CONCLUSION

For the foregoing reasons, the Alliance Parties' Amended Counterclaim against Euclid should be dismissed with prejudice.

Dated: May 4, 2026

*/s/ Matthew P. Weinshall*
**PODHURST ORSECK, P.A.**
Peter Prieto (FBN 501492)
Matthew P. Weinshall (FBN 84783)
2525 Ponce de Leon, Suite 700
Coral Gables, FL 33134
T. 305-358-2800
pprieto@podhurst.com
mweinshall@podhurst.com
dsilverio@podhurst.com