**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 25-cv-20647-BLOOM/Elfenbein

EUCLID TURNAROUND OPPORTUNITY
FUND LP,

Plaintiff,

v.

AMERANT EQUIPMENT FINANCE, *et al.*,

Defendants.
_____________________________/

**ORDER ON MOTION TO DISMISS SB DEFENDANTS' COUNTERCLAIMS**

**THIS CAUSE** is before the Court upon Plaintiff Euclid Turnaround Opportunity Fund, LP's ("Euclid") Motion to Dismiss the SB Defendants' Counterclaims, ECF No. [275] ("Motion"). Defendants SB Ecliptica, LLC; Truewind Management, LLC; America1 Industries, LLC; America1 Holdings, LLC; and Sergei Bratushev (collectively, the "SB Counterclaimants") filed a First Amended Answer, Affirmative Defenses, Counterclaims, and Crossclaims. ECF No. [269] ("First Amended Counterclaim"). Euclid moves to dismiss SB Counterclaimants' Counterclaims—tortious interference with a contract (Count I) and abuse of process (Count II). *See* ECF No. [275]. SB Counterclaimants filed a Response, ECF No. [285], to which Euclid filed a Reply, ECF No. [300]. The Court has considered the Motion, the Response, the Reply, the record, applicable law, and is otherwise fully advised. For the reasons that follow, Euclid's Motion is granted.

## I. BACKGROUND

The Court assumes the parties' familiarity with the case and provides only the background necessary to resolve the instant Motion.

This case arises from the transfer of a distressed commercial debt—specifically, two promissory notes (the "Notes")—issued by Amerant Bank, N.A. ("Amerant") to Alliance Metals, LLC ("Alliance Metals") to finance the acquisition, installation, and operation of heavy industrial equipment at Alliance Metals' aluminum smelting operations facility in Alabama. ECF No. [269]. The First Amended Counterclaim alleges that in 2024 Amerant entered into negotiations with SB Ecliptica regarding SB Ecliptica's purchase of the Notes. *Id.* Amerant prepared and transmitted a Loan Sale and Assignment Agreement ("SB Assignment Agreement") and represented it was a binding agreement for the sale and transfer of the Notes to SB Ecliptica. *Id.* The SB Assignment Agreement expressly represented and warranted that execution and performance of the Agreement would not breach any other agreement and that Amerant had not previously transferred or committed to transfer any interest in the Notes. *Id.* Amerant also expressed that it had full authority to sell the Notes and there was no impediment to the transaction. *Id.* at 34. SB Ecliptica executed the SB Assignment Agreement on about January 16, 2025, and paid a total of $3,500,000 to Amerant. *Id.* at 34. Amerant accepted the funds. *Id.* SB Ecliptica satisfied all contractual conditions required to effectuate the transfer of the Notes. *Id.*

The First Amended Counterclaim alleges that Euclid engaged in separate and independent negotiations with Amerant regarding the potential acquisition of the Notes, but the negotiations did not result in a completed transaction. *Id.* at 35. Amerant never executed or delivered an assignment transferring ownership of the Notes to Euclid, and Euclid never acquired possession, custody, or control of the Notes. *Id.* SB Counterclaimants allege that Euclid undertook independent efforts to interfere with Amerant and SB Ecliptica's transaction and to assert influence over Alliance Metals and its operations. *Id.* Those efforts included direct communications with Amerant's and Alliance Metals' personnel, attempts to secure access to Alliance Metals' facility

and collateral, and payment of consulting fees to Alliance Metals' plant manager in connection with Euclid's efforts to obtain operational control over Alliance Metals and position itself as the effective successor creditor. *Id.*

After SB Ecliptica tendered the full agreed purchase price and fully performed the contractual obligations under the SB Assignment Agreement, Euclid initiated litigation asserting claims for conversion, aiding and abetting conversion, tortious interference, and declaratory relief against Amerant, the Alliance Defendants, and SB Counterclaimants, alleging that SB Ecliptica's purchase of the Notes was unlawful. *Id.* at 35-36. Euclid's First and Second Amended Complaints sought specific performance of its purported agreement with Amerant, arguing that the Notes and collateral were unique and essential to Euclid's intended business strategy. *Id.*

The First Amended Counterclaim alleges that Euclid's argument for specific performance confirms that Euclid had not obtained ownership or possession of the Notes and required judicial intervention to attempt to obtain such rights. *Id.* Euclid also filed an Expedited Motion for Temporary Restraining Order and Preliminary Injunction ("Motion for TRO") to prevent Amerant and others from transferring, enforcing, or exercising their rights under the Notes and collateral. *Id.* Euclid sought this extraordinary relief even though it never tendered the full purchase price, never received an executed assignment, and never acquired ownership or possessory rights in the Notes. *Id.* SB Counterclaimants allege Euclid sought judicial intervention not to preserve existing rights but to prevent SB Counterclaimants from exercising their lawful rights. *Id.*

Prior to the Court's ruling on the Motion for TRO, Euclid entered into a Joint Stipulation with Amerant, which imposed restraints affecting the Notes and collateral, including restricting Amerant's ability to transfer, enforce, or otherwise exercise rights concerning the Notes and collateral. *Id.* SB Counterclaimants did not consent to the Joint Stipulation, and Amerant had

already accepted payment for the sale of the Notes to SB Counterclaimants. *Id.* at 37. After the Joint Stipulation, Euclid withdrew its Motion for TRO. *Id.* Euclid has continued to prosecute its claims for conversion, aiding and abetting conversion, and declaratory relief despite previously acknowledging that it did not possess the Notes and stipulating to facts inconsistent with such claims. *Id.* Euclid's Corrected Fourth Amended Complaint no longer seeks specific performance of the purported agreement with Amerant. *Id.* SB Counterclaimants allege Euclid continues to prosecute the case despite abandoning its claim for specific performance in order to impair SB Counterclaimants' rights and to obtain leverage over the Notes and collateral. *Id.*

As relevant to this Motion, SB Counterclaimants' First Amended Counterclaim asserts two counts: tortious interference with contract by SB Ecliptica against Euclid (Count I) and abuse of process brought by SB Counterclaimants against Euclid (Count II). ECF No. [269] at 38-44. In the Motion, Euclid argues that both Counts must be dismissed because Florida's litigation privilege bars the claims, and SB Counterclaimants have not alleged facts sufficient to state a claim for tortious interference with contract or for abuse of process. ECF No. [275]. SB Counterclaimants respond that the litigation privilege does not apply because Euclid has abandoned the claim that justified the Joint Stipulation, and Count I and Count II allege facts sufficient to state their claims. ECF No. [285].

## II. LEGAL STANDARD

"A motion to dismiss a counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6) is evaluated in the same manner as a motion to dismiss a complaint." *Geter v. Galardi S. Enters., Inc.*, 43 F. Supp. 3d 1322, 1325 (S.D. Fla. 2014) (quoting *Great Am. Assur. Co. v. Sanchuk, LLC*, No. 8:10–cv–2568–T–33AEP, 2012 WL 195526, at *2 (M.D. Fla. Jan. 23, 2012)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Indeed, a pleading in any civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although these standards do not require detailed factual allegations, a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

"[O]nly a [counterclaim] that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). To satisfy this "plausibility standard," a counter plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the [counter] defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). On a motion to dismiss, the court construes the complaint in the light most favorable to the counter plaintiff and takes the factual allegations as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997). "The motion may be granted only if, viewing the pleaded facts in the light most favorable to the counter-claimant, no set of facts in support of the claim would entitle [the] counter-claimant[ ] to relief." *Fabricant v. Sears Roebuck*, 202 F.R.D. 306, 308 (S.D. Fla. 2001). On a Rule 12(b)(6) motion, the movant bears the burden of showing entitlement to dismissal. *See Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020) ("It is the defendant's burden to establish the complaint's insufficiency.").

## III. DISCUSSION

Euclid argues that SB Counterclaimants' Counterclaims fail as a matter of law and must be dismissed. ECF No. [275]. Both claims are barred by Florida's litigation privilege because the conduct underlying the claims concerns this case and a related case pending in state court. *Id.* Count I should also be dismissed because SB Counterclaimants fail to adequately allege that Euclid used improper means or that they suffered cognizable damages. *Id.* Count II should also be

dismissed because SB Counterclaimants do not allege Euclid used the judicial process for an improper purpose. *Id.* SB Counterclaimants respond that the conduct underlying their Counterclaims arises from Euclid's Joint Stipulation with Amerant, which is not covered by the litigation privilege, and they have alleged facts to establish the elements of each claim. ECF No. [285]. The Court first addresses whether the litigation privilege applies.

**A. Litigation Privilege**

Euclid argues that Florida's litigation privilege bars SB Counterclaimants' Counterclaims. ECF No. [275] at 5. When viewing the Counterclaims' well-pled factual allegations, the conduct alleged is covered by the litigation privilege. *Id.* The alleged conduct includes filing a Complaint, filing a Motion for TRO, and entering into a Joint Stipulation, which are all acts occurring during a judicial proceeding and related to a judicial proceeding. *Id.* at 6-7. The allegations regarding Euclid's communications with Amerant are not well-pled, but even so, are communications with a defendant, are a necessary part of the litigation, and fall within the privilege. *Id.* at 7. The remaining allegations are legal conclusions or "nonsensical, implausible" theories of liability. *Id.* at 8.

SB Counterclaimants respond that the conduct alleged does not fall under the litigation privilege. ECF No. [285] at 6. SB Counterclaimants argue that once Euclid abandoned its claim for specific performance on May 9, 2025, the Joint Stipulation ceased to have any "relation" to the operative proceedings. *Id.* Where the Corrected Fourth Amended Complaint seeks damages, continuing to enforce a restraint against Amerant does not advance any claim Euclid is actually litigating. *Id.* The Joint Stipulation is a continuing restraint that operates each day it remains in force, and a party is free to dissolve or modify it at any time. *Id.* Where the justification for maintaining the restraint has been abandoned, the continuing enforcement of the restraint is not an

"act" of litigation but is instead a coercive instrument operating outside the scope of the pleaded proceeding. *Id.* Therefore, the litigation privilege does not apply.

In Reply, Euclid argues the litigation privilege applies because the Counterclaims allege litigation conduct that occurred in this judicial proceeding. ECF No. [300]. SB Counterclaimants are attempting to create an exception by recharacterizing the Joint Stipulation as an extra-judicial coercive instrument, which is not supported by binding precedent. *Id.* Euclid's later decision to refine, narrow, or abandon a previously pled basis for relief does not retroactively strip the privilege applying to those acts. *Id.* at 3. Euclid also has not abandoned its claimed interest in the Notes and seeks relief consistent with such interest. *Id.* at 4. Specifically, the declaratory judgment claim disposes of SB Counterclaimants' argument that the Joint Stipulation is not related to the proceedings because the Joint Stipulation preserves the status quo of the Notes while the Court decides the rights of those assets. *Id.* Thus, the Joint Stipulation is related to the ongoing proceedings. *Id.* Euclid argues SB Counterclaimants seek to dissolve the Joint Stipulation, but tortious counterclaims are not the proper vehicle to pursue that relief. *Id.* at 5.

Under Florida law, the litigation privilege provides absolute immunity for acts occurring during judicial proceedings if the act is related to the proceeding. *Jackson v. Bellsouth Telecomm.*, 372 F.3d 1250, 1274-75 (11th Cir. 2004); *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Ins. Co.*, 639 So. 2d 606, 608 (Fla. 1994) ("[A]bsolute immunity must be afforded to any act occurring during the course of a judicial proceeding, regardless of whether the act involves a defamatory statement or other tortious behavior[,] so long as the act has some relation to the legal proceeding."). The privilege initially developed to protect litigants and attorneys from liability for acts of defamation but has since been extended to cover all acts related to and occurring within judicial proceedings. *Jackson*, 372 F.3d at 1274-75 (citing *Levin*, 639 So.

2d at 607-08); *see also Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*, 950 So. 2d 380, 384 (Fla. 2007) (holding that Florida law provides complete judicial immunity "to any act occurring during the course of a judicial proceeding . . . so long as the act has some relation to the proceeding.").

Federal courts may apply Florida's litigation privilege to state-law claims adjudicated in federal court. *Zucker for BankUnited Fin. Corp. v. U.S. Specialty Ins. Co.*, 856 F.3d 1343, 1349 (11th Cir. 2017). Determining whether the litigation privilege applies is a question of law, and determining its application during early stages of litigation furthers the policy underlying the privilege. *See AGM Investors, LLC v. Business Law Group*, 219 So. 3d 920, 926-97 (Fla. 2d DCA 2017). The litigation privilege "may be considered in resolving a motion to dismiss when the complaint affirmatively and clearly shows the conclusive applicability of the defense to bar the action." *Jackson*, 372 F.3d at 1277 (internal quotations and citations omitted).

Here, the well-pled factual allegations in Count I and Count II include Euclid's conduct regarding filing a complaint asserting claims of ownership in the Notes, seeking emergency injunctive relief to prevent Amerant from transferring the Notes to SB Counterclaimants, entering into a Joint Stipulation with Amerant to prevent the Notes' transfer, and communicating with Amerant to influence how Amerant handles and disposes of the Notes. *See* ECF No. [269] at 39-40. Counts I and II also allege that Euclid sought specific performance to transfer the Notes; voluntarily withdrew its Motion for TRO after signing the Joint Stipulation; abandoned and withdrew its claim for specific performance in its Third, Fourth, and Corrected Fourth Amended Complaints; failed to withdraw or modify the Joint Stipulation; and continues to prosecute its claims that SB Counterclaimants wrongfully possessed or interfered with property to which Euclid claims it has a right of possession. *See* ECF No. [269] at 40-44.

The conduct alleged falls squarely within the litigation privilege as each act occurred during the course of this judicial proceeding and is related to this judicial proceeding. The litigation privilege covers the filing of Euclid's Complaints. *See Wolfe v. Foreman*, 128 So. 3d 67, 70 (Fla. 3d DCA 2013) ("The filing of a complaint, which initiates the judicial proceedings, obviously 'occurs during the course of a judicial proceeding' and 'relates to the proceeding.'"). The litigation privilege covers filing motions, including those for injunctive relief. *See Schmidt v. Antunez*, No. 24-cv-22464, 2026 WL 2164329, at *4 (S.D. Fla. July 28, 2026) ("Filing a motion in an ongoing judicial proceeding is a paradigmatic example of the kind of routine litigation activity the privilege is intended to protect."); *see also Leafwell, Inc. v. The DOC App, Inc.*, No. 25-CV-01132, 2026 WL 1109413, at *8 (M.D. Fla. Apr. 24, 2026) (applying the litigation privilege to a claim arising from filing a motion for temporary restraining order and preliminary injunction). The litigation privilege covers settlement activities. *See Jackson*, 372 F.3d at 1275 ("Although we are aware of no decision in which a Florida court has squarely held that the litigation privilege applies to actions exactly like those taken by the BellSouth defendants to settle the ongoing, protracted litigation at issue here, we agree with those courts that have applied similar litigation privileges to settlement activities, and believe that Florida's courts would do so too."). The litigation privilege covers communications between parties regarding the substance of their claims. *See Levin*, So. 2d at 608 ("[T]orts [. . . .] that are based on statements made in connection with a judicial proceeding are not actionable.").[1] Therefore, the litigation privilege covers claims arising from Euclid filing its

[1] SB Counterclaimants do not allege the dates or substance of Euclid's communications with Amerant. If SB Counterclaimants are alleging the statements were tortious, a qualified privilege extends over "ex-parte, out-of-court statements, so long as the alleged defamatory statements bear some relation to or connection with the subject of inquiry in the underlying lawsuit. A qualified privilege requires the plaintiff to establish express malice." *DelMonico v. Traynor*, 116 So. 3d 1205, 1208 (Fla. 2013). The First Amended Counterclaim alleges the communications concerned Amerant's handling of the Notes, which is related to the subject of this action. The First Amended Counterclaim does not allege express malice.

Complaints, filing a Motion for TRO, reaching an agreement with a party to this case, signing a Joint Stipulation, and communicating with a party about the status of the Notes.

SB Counterclaimants' arguments that the litigation privilege does not apply to its claims and the conduct alleged here are unpersuasive. While there are exceptions to the application of the litigation privilege,[2] courts have applied the litigation privilege to tortious interference claims and abuse of process claims. *See Levin*, 639 So. 2d at 608 (applying the litigation privilege to any tortious behavior, including tortious interference with a business relationship); *EMI Sun Vill., Inc. v. Catledge*, 779 F. App'x 627, 635 (11th Cir. 2019) ("The litigation privilege applies to actions for abuse of process." (citing *LatAm Invs., LLC v. Holland & Knight, LLP*, 88 So. 3d 240, 242 (Fla. 3d DCA 2011))).[3] Although the litigation privilege applies to the claims raised in the First Amended Counterclaim, SB Counterclaimants argue the privilege does not apply to the conduct alleged because Euclid filed its Complaint knowing that it had no ownership interest in the Notes. The Court disagrees. SB Counterclaimants contest whether Euclid has an ownership interest in the

[2] The Florida Supreme Court has held that the litigation privilege does not apply to malicious prosecution claims because "malicious prosecution could never be established if causing the commencement or continuation of an original proceeding against the plaintiff were afforded absolute immunity under the litigation privilege." *See Debrincat v. Fischer*, 217 So. 3d 68, 70 (Fla. 2017); *see also Florida Psychological Consultants, Inc. v. Comas*, 434 So. 3d 795, 800 (Fla. 5th DCA 2026) (noting that barring malicious prosecution claims under the privilege "would be to erase the cause of action from the books").

[3] Plaintiff cites *Debrincant* to support its position that the reasoning to except malicious prosecution claims from the litigation privilege applies to this case. The Eleventh Circuit has held that "[w]hen the Florida courts have not addressed whether the litigation privilege applies to a particular cause of action, we must assess the privilege's applicability to it in light of the specific conduct for which the defendant seeks immunity by asking whether applying the privilege would meaningfully serve the aims of the privilege or eviscerate long-standing sources of judicially available recovery." *EMI Sun Vill., Inc. v. Catledge*, 779 F. App'x 627, 635 (11th Cir. 2019) (internal quotations and citations omitted). That analysis is not necessary here because Florida courts have applied the litigation privilege to both causes of action asserted in the First Amended Counterclaim.

Notes. Determining the merits of claims filed with the Court is precisely what the judicial process is designed to do.[4]

SB Counterclaimants also argue that Euclid's reliance on the Eleventh Circuit's decision in *Jackson*, applying the litigation privilege to settlement activities, is inapplicable to the claims here. SB Counterclaimants argue *Jackson* is distinguishable because *Jackson* concerned the negotiation and consummation of a global settlement that resolved the underlying claims. Because the Joint Stipulation resolved only Euclid's pending Motion for TRO, SB Counterclaimants argue the settlement did not resolve a single claim, terminate any dispute, allocate rights, or bring the parties closer to final adjudication. And once Euclid dropped its claim for specific performance of the purported agreement to transfer the Notes, the Joint Stipulation ceased to be related to the ongoing litigation and is therefore no longer an "act" of litigation covered by the litigation privilege. *See* ECF No. [285] at 6-8. The Court disagrees.

In *Jackson*, the Eleventh Circuit applied the litigation privilege to settlement negotiations that "occurred during the course of a judicial proceeding *and* had a substantial relation to that proceeding." 372 F.3d at 1276. Moreover, the Florida Supreme Court has held that the litigation privilege grants absolute immunity "immediately upon the doing of any act required or permitted by law in the due course of the judicial proceedings." *Fridovich v. Fridovich*, 598 So. 2d 65, 66 (Fla. 1992) (quoting *Ange v. State*, 123 So. 916, 917 (Fla. 1929)). There is no indication that *Jackson* was confined to global settlement agreements, and parties are permitted to resolve pending motions by agreement. Even after Euclid dropped its claim for specific performance, the Joint Stipulation remained related to the judicial proceeding because it prevents the transfer of Notes

---

[4] To the extent SB Counterclaimants allege misconduct in any statements made in filing the Complaint, the Florida Supreme Court has applied the litigation privilege to bar claims of tortious conduct based on statements relevant to the judicial proceedings that are contained in a complaint. *See Echevarria*, 950 So. 2d 380, 383 (Fla. 2007) (citing *Myers v. Hodges*, 44 So. 357 (Fla. 1907)).

that are subject to the ongoing action to determine competing claims of ownership interest in those Notes. Where the Joint Stipulation settled a pending motion for injunctive relief, was made in the course of a judicial proceeding, and is substantially related to ongoing proceedings, it is a settlement activity covered by the litigation privilege.

Moreover, the litigation privilege grants absolute immunity *immediately* upon doing the act, and SB Counterclaimants do not point to any case where the litigation privilege is lost because of subsequent developments within a judicial proceeding. Adopting SB Counterclaimants' position that the litigation privilege may be lost if a claim is subsequently abandoned would subvert the rationale for adopting the privilege. As the Florida Supreme Court stated, "[j]ust as participants in litigation must be free to engage in unhindered communication, so too must those participants be free to use their best judgment in prosecuting or defending a lawsuit without fear of having to defend their actions in a subsequent civil action for misconduct." *Levin*, 639 So. 2d at 608. Removing the privilege over actions taken during and related to judicial proceedings if a claim is subsequently dropped would hinder parties' freedom to use their best judgment during a lawsuit—causing many parties to avoid settlement or dropping a claim for fear of defending a potential suit. Such a result is contrary to the express purpose of the litigation privilege.

In conclusion, the acts alleged in Count I and Count II of the SB Counterclaimants' First Amended Counterclaim are acts taken during the course of judicial proceedings and are related to the proceedings. Therefore, Florida's litigation privilege bars claims arising from that conduct and Count I and Count II are dismissed.[5]

[5] Although the litigation privilege provides absolute immunity to acts occurring during and related to judicial proceedings, to the extent there was any misconduct by Euclid, *Levin* makes clear there are other avenues to obtain a remedy for barred claims, including sanctions in the underlying proceeding, bar association investigations, and criminal prosecution. *See Levin*, 639 So. 2d at 608-09.

**B. Failure to State a Claim**

Because the Court concludes that Florida's litigation privilege applies to the conduct alleged in Count I and Count II, it need not address whether SB Counterclaimants have sufficiently alleged the elements of each Count.

**IV. CONCLUSION**

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Euclid's Motion to Dismiss the SB Defendants' Counterclaims, **ECF No. [275]**, is **GRANTED**.
2. **Counts I and II** of SB Counterclaimants' First Amended Counterclaim, **ECF No. [269]**, are **DISMISSED WITH PREJUDICE**.

**DONE AND ORDERED** in Chambers at Miami, Florida on August 27, 2026.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record